356 So.2d 408 (1978)
LOUISIANA STATE BAR ASSOCIATION
v.
Charles M. STEVENSON.
No. 58661.
Supreme Court of Louisiana.
March 6, 1978.
Rehearing Denied April 6, 1978.
John B. Scofield, Chairman, Lake Charles, Wood Brown, III, New Orleans, Sam J. D'Amico, Baton Rouge, Leonard Fuhrer, Alexandria, Harold J. Lamy, New Orleans, Edgar H. Lancaster, Jr., Tallulah, Henry A. Politz, Shreveport, John F. Pugh, Thibodaux, A. Russell Roberts, Metairie, Thomas O. Collins, Jr., Executive Counsel, New Orleans, for petitioner (relator), Louisiana State Bar Association.
Arthur A. Lemann, III, New Orleans, for respondent.

DISCIPLINARY PROCEEDINGS
MARCUS, Justice.
The Louisiana State Bar Association, through its Committee on Professional Responsibility, *409 instituted this disciplinary proceeding against Charles M. Stevenson, a member of said association. The Committee's petition for disciplinary action is based upon respondent's final conviction resulting from a plea of guilty to the crime of credit card fraud in violation of the Consumer Credit Protection Act, 15 U.S.C. § 1644(a), and 18 U.S.C. § 2.
On April 8, 1976, Charles M. Stevenson was indicted in the United States District Court for the Eastern District of Louisiana, New Orleans Division, on two counts of violating the Consumer Credit Protection Act, 15 U.S.C. § 1644(a), and 18 U.S.C. § 2.[1] On May 3, 1976, a plea of guilty was entered to count two of the indictment which charged in pertinent part:
From on or about October 9, 1975, and continuously thereafter until on or about November 10, 1975, in the Eastern District of Louisiana, CHARLES M. STEVENSON and a person who is unknown to the Grand Jury, in a transaction affecting interstate commerce, did willfully, knowingly and unlawfully use a BankAmericard credit card fraudulently obtained from Ildefonso R. Gonzalez, a client of the said CHARLES M. STEVENSON, to obtain goods, services and other things of value which within the calendar year 1975 had a value aggregating in excess of $1,000, all in violation of Title 15, United States Code, Section 1644(a) and Title 18, United States Code, Section 2.
Count two of the indictment listed each of the various charges on the BankAmericard which totaled $1,083.41. On motion of counsel for the government, count one (based upon charges totaling $1,042.79 on a Master Charge credit card) was ordered dismissed. Following conviction resulting from his plea of guilty to count two, respondent was sentenced to imprisonment for a period of three years, three months of which he was ordered to serve in a "jail type institution." Execution of the balance of the sentence was suspended, and respondent was placed on probation for a period of two years and nine months. As a special condition of probation, respondent was suspended from the practice of law until further orders of the court.
Based upon respondent's conviction of the aforesaid crime and its determination that the crime of which respondent had been convicted constituted a "serious crime" reflecting upon his moral fitness to practice law, the Committee on Professional Responsibility filed a petition in this court on September 27, 1976, seeking an order suspending respondent from the practice of law and ordering the Committee to institute the necessary disciplinary proceedings.[2] Moreover, respondent's conviction had become final. On September 28, 1976, this court granted the requested order.
Subsequently, on October 8, 1976, the Committee filed a petition in this court seeking disciplinary action against respondent under the provisions of Article 15, section 8, paragraph (7)(a) through (d) of the Articles of Incorporation of the Louisiana State Bar Association.[3] Respondent *410 filed an answer denying that he was morally unfit to practice law. After issue was joined by respondent's answer, a Commissioner was appointed by this court. A hearing was conducted on January 31, 1977, at which respondent was afforded full and unrestricted opportunity to present any and all evidence of "mitigating circumstances not inconsistent with the essential elements of the crime for which he was convicted. . .." In the formal report of the Commissioner to this court, it is stated that the Commissioner found the offense for which respondent was convicted to be a felony under federal law involving moral turpitude and constituting a "serious crime" warranting disciplinary action, the only question being as to the extent of such discipline. The Commissioner recommended discipline "up to and including disbarment"; however, he specifically recommended against suspension for a determinate period of time as the record did not indicate when respondent would be able "emotionally and morally" to reenter the practice of law. The Commissioner stated that the burden of demonstrating his ability to resume the practice of law should be placed upon respondent. The Committee on Professional Responsibility filed its concurrence to the report of the Commissioner. An exception was filed by respondent to the report of the Commissioner. The matter was then submitted to this court under our original jurisdiction.[4]
The sole issue to be determined by this court in a disciplinary proceeding based on a conviction of a crime is whether "the crime warrants discipline, and if so, the extent thereof." Article 15, section 8, paragraph (7)(d) of the Articles of Incorporation of the Louisiana State Bar Association; Louisiana State Bar Association v. Hennigan, 340 So.2d 264 (La.1976).
At the hearing before the Commissioner, respondent introduced evidence of mitigating circumstances.
Respondent is thirty-five years of age and a native of Texas. His mother and father were divorced when he was three years of age. His mother has remarried three or four times. Respondent has been on his own since the age of sixteen. He attended Louisiana State University and received his law degree from Loyola University School of Law in 1968, working his way through school. After graduation from law school, he worked as an insurance adjuster for two and a half years with Hartford Insurance Company. Thereafter, respondent entered the private practice of law in Metairie, Louisiana. He served as an officer of the Jefferson Parish Bar Association for two years. Respondent was married at the age of twenty which marriage ended in a divorce after thirteen years. One child was adopted during this marriage. He has since remarried; one child has been born as a result of his second marriage. Respondent testified concerning his marital problems and emotional state during the time of his criminal conduct. He professed contrition for the crime and a desire to reenter the practice of law.
Dr. Oliver Sanders, Jr., a psychiatrist, testified on behalf of respondent. He stated that respondent first consulted him on January 15, 1976, about emotional problems and that he and his wife, a psychiatric *411 social worker, treated respondent until June 10, 1976. Dr. Sanders diagnosed respondent's condition as "a depersonalization neurosis which is a mild form of . . . multiple personality." He stated that he believed relator's criminal conduct was caused by this neurosis. Dr. Sanders further testified that respondent again consulted him on January 18, 1977 after having served the three-month prison sentence. He stated that there was still a danger that respondent might again lapse into antisocial behavior. He opined that it might be advisable for respondent to avoid the private practice of law for a period of time because it is "very stressful" and suggested that he wait "until he has matured more" and then come before the Committee and "produce evidence that he could handle that type of pressure."
The Committee produced no countervailing evidence on the issue of mitigation.
First, we agree with the finding of the Commissioner, concurred in by the Committee, that respondent has been convicted of a serious crime which reflects adversely upon his moral fitness to practice law. Hence, disciplinary action is warranted. Nevertheless, after reviewing the evidence of mitigating circumstances as set forth above, we do not find that respondent should be disbarred. Rather, we consider that respondent should be suspended from the practice of law for a period of three years from the date of this decree; however, reinstatement will not be automatic. Respondent may apply for reinstatement after the lapse of the three-year period; and such application shall be granted by this court, after due proceedings, upon a clear showing by respondent that he is emotionally able to resume the practice of law. Absent reinstatement by this court, respondent's suspension to practice law shall continue in effect.

DECREE
For the reasons assigned, it is ordered, adjudged and decreed that Charles M. Stevenson be suspended from the practice of law in Louisiana for a period of three years from the date of this decree; however, reinstatement will not be automatic. Respondent may apply for reinstatement after the lapse of the three-year period; and such application shall be granted by this court, after due proceedings, upon a clear showing by respondent that he is emotionally able to resume the practice of law. Absent reinstatement by this court, respondent's suspension to practice law shall continue in effect.
NOTES
[1] 15 U.S.C. § 1644(a) provides:

Whoever knowingly in a transaction affecting interstate or foreign commerce, uses or attempts or conspires to use any counterfeit, fictitious, altered, forged, lost, stolen, or fraudulently obtained credit card to obtain money, goods, services, or anything else of value which within any one-year period has a value aggregating $1,000 or more . . . shall be fined not more than $10,000 or imprisoned not more than ten years, or both.
18 U.S.C. § 2 provides:
(a) Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.
(b) Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal.
[2] This action was taken under the provisions of Article 15, section 8, paragraphs (1) through (6) of the Articles of Incorporation of the Louisiana State Bar Association.
[3] Article 15, section 8, paragraph (7)(a) through (d) of the Articles of Incorporation of the Louisiana State Bar Association provide:

(7) After the conviction has become final, that is, all appeals have been concluded or exhausted, the procedure shall be as follows:
(a) The Committee will file a petition in the Supreme Court seeking disbarment or any other remedy that the Committee deems appropriate, and the petition will be served upon the respondent in the same manner as in ordinary proceedings.
(b) When issue is joined by answer by the respondent, a Commissioner will be appointed by the Supreme Court to represent the Court in the same manner as in ordinary proceedings.
(c) At the hearing before the Commissioner, the certificate of the conviction of the respondent shall be conclusive evidence of his guilt of the crime for which he has been convicted.
(d) At the hearing based upon a respondent's conviction of a crime, the sole issue to be determined shall be whether the crime warrants discipline, and if so, the extent thereof. At the hearing the respondent may offer evidence only of mitigating circumstances not inconsistent with the essential elements of the crime for which he was convicted as determined by the statute defining the crime.
[4] La.Const. art. 5, § 5(B) (1974).