430 So.2d 47 (1983)
LOUISIANA STATE BAR ASSOCIATION
v.
Joseph N. MARCAL III.
No. 64889.
Supreme Court of Louisiana.
April 4, 1983.
Thomas O. Collins, Jr., Wood Brown, III, New Orleans, Robert J. Boudreau, Lake Charles, Sam J. D'Amico, Baton Rouge, Carrick E. Inabnett, Monroe, Harold J. Lamy, New Orleans, Alfred S. Landry, New Iberia, Phillippi P. St. Pee, Metairie, Roland J. Achee, Shreveport, Gerard F. Thomas, Natchitoches, Richard A. Deas, New Orleans, for relator.
*48 Joseph N. Marcal, III, New Orleans, pro se, respondent.
MARCUS, Justice.
The Louisiana State Bar Association, through its Committee on Professional Responsibility, instituted this disciplinary proceeding against Joseph N. Marcal III, a member of said association. The Committee's petition for disciplinary action is based on respondent's final convictions after a bench trial in the Criminal District Court for the Parish of Orleans of two counts of public bribery in violation of La.R.S. 14:118.
On July 28, 1977, Joseph N. Marcal III was indicted by the grand jury for the Parish of Orleans on two counts of public bribery in violation of La.R.S. 14:118. The first count of the indictment alleged that on or about March 20, 1975, defendant paid Mrs. Dorothy Boyd, a deputy clerk of the Criminal District Court, $200 to allot one of his cases to a particular section of court. The second count charged that defendant committed the identical offense on May 16, 1975, when he gave Mrs. Boyd $200 to have another case allotted to the same section of that court. On August 2, 1978, following his conviction on both counts, respondent was sentenced to serve one year at hard labor on each count, the sentences to run concurrently.
On June 13, 1979, based on respondent's convictions and its determination that the crimes for which respondent had been convicted were "serious crimes" reflecting on his moral fitness to practice law, the Committee on Professional Responsibility filed a petition in this court seeking an order suspending respondent from the practice of law and authorizing the Committee to institute the necessary disciplinary proceedings. On July 2, 1979, we denied the request because of the Committee's delay in applying for respondent's suspension (after conviction and before appeal) and the fact that respondent's appeal from his convictions had been filed in this court and was scheduled for oral argument in September. On January 28, 1980, after hearing respondent's appeal, we affirmed his convictions and sentences.[1] Rehearing was granted. On rehearing, we reinstated our original opinion and affirmed the convictions and sentences.[2] The Committee on Professional Responsibility then sought suspension of respondent's license to practice law during the pendency of any future appeals through the federal system and authority to institute the necessary disciplinary proceedings. This court granted the Committee's requested order. However, on November 7, 1980, on respondent's motion, we rescinded and set aside our previous order suspending him from the practice of law until further orders of this court or final action by the United States Supreme Court.
After the United States Supreme Court denied respondent rehearing on its denial of his appeal and writs of certiorari thereby finalizing his convictions and sentences, the Committee on Professional Responsibility again sought an order from this court suspending respondent from the practice of law and authorizing the Committee to institute disciplinary proceedings. On July 2, 1981, the requested order was granted. On July 13, 1981, respondent began serving the one-year sentence for his convictions. He spent about two months at the Hunt Correctional Facility and two months at Jackson Barracks and was then paroled.
In the meanwhile, on August 24, 1981, the Committee filed a petition in this court, as ordered, seeking disciplinary action against respondent under Article 15, section 8, paragraph 7(a) through (d) of the Articles of Incorporation of the Louisiana State Bar Association.[3] Respondent filed an answer *49 as well as certain exceptions to the petition. After issue was joined by respondent's answer, a Commissioner was appointed by this court. Respondent's exceptions were overruled and a hearing was scheduled for June 1, 1982, but, at respondent's request, was continued pending the outcome of a suit he had filed in the federal district court to enjoin these proceedings on due process and equal protection grounds. On June 18, 1982, respondent voluntarily dismissed that suit, and the hearing was scheduled for August 23, 1982. At this hearing, respondent was afforded full and unrestricted opportunity to present any and all evidence of "mitigating circumstances not inconsistent with the essential elements of the crime for which he was convicted...." In the formal report of the Commissioner to this court, it is stated that the Commissioner found the offenses for which respondent was convicted to be felonies involving moral turpitude and constituting serious crimes warranting disciplinary action, the only question being the extent of such discipline. Based on the strong mitigating circumstances, the Commissioner was of the opinion that respondent should not be disbarred but should be suspended from the practice of law "for a period of two years commencing July 2, 1982." The effect of the Commissioner's recommendation was a suspension of three years since respondent had been previously suspended from the practice of law on July 2, 1981. The Committee on Professional Responsibility filed its concurrence to the report of the Commissioner. Respondent likewise concurred in the Commissioner's report except as to the Commissioner's refusal to permit evidence relative to his innocence of the crimes for which he was convicted and the length of time of the suspension recommended by the Commissioner. The matter was then submitted to the court under our original jurisdiction.[5]
The Commissioner correctly excluded evidence relative to respondent's guilt or innocence of the crimes for which he was convicted. The sole issue to be determined by this court in a disciplinary proceeding based on a conviction of a crime is whether "the crime warrants discipline, and if so, the extent thereof." Article 15, section 8, paragraph 7(d) of the Articles of Incorporation of the Louisiana State Bar Association; Louisiana State Bar Association v. Stevenson, 356 So.2d 408 (La.1978); Louisiana State Bar Association v. Hennigan, 340 So.2d 264 (La.1976).
At the hearing before the Commissioner, respondent introduced evidence of mitigating circumstances. Some thirty-four witnesses testified on his behalf.
Respondent is now forty years old. He received a Bachelor of Arts degree and a law degree from Tulane University. He was admitted to practice in Louisiana in 1966 and worked as an assistant district attorney and then entered general private practice, civil and criminal. In 1976, he was married; he has one child by that marriage, age three and a half. Since his indictment for public bribery in 1977, respondent has suffered a dramatic decrease in income. His family's current income is based primarily upon his wife's salary and some property which respondent is preparing for rental. Respondent testified concerning his extensive community service work and pro bono representation of unpopular clients. He also testified concerning his emotional problems which predated his indictment for *50 public bribery and later intensified but have since been abated. Respondent still considers that he has been penalized for something he did not do and that the punishment meted out has caused him untold embarrassment and physical and economic hardship. He points to the enthusiasm with which he performed legal related work while at Jackson Barracks and on parole as an indication of his dedication to the legal profession and states that he now wishes more than anything to resume his legal practice.
Numerous former clients, as well as attorneys and civil rights activists with whom respondent had worked and judges before whom he had appeared, testified that they consider Mr. Marcal a man of complete competence and ethical and moral integrity who has demonstrated his dedication to the legal profession and is a credit to the Bar. Mr. Marcal was often described as a maverick who took on unpopular cases. Many of the witnesses commented on his voluntary service to community organizations, groups and individuals over the years. Mr. Marcal was highly praised for being an idealist and a dedicated advocate whose work exemplified his thoroughness and preparation.
Several correctional officers from Jackson Barracks testified that during his stay in that facility, Mr. Marcal not only proved himself to be invaluable at the work to which he was assigned in the facility's law library, but also at the work that he voluntarily undertook, including several legal research projects and rewriting 80% of the inmate disciplinary procedures book for the Department of Corrections.
Dr. William R. Sorenson, a psychiatrist, testified that respondent had been referred to him by Dr. Dabney M. Ewin who had noted that Mr. Marcal was a dedicated person in a state of overdrive, suffering from extreme anxiety, very depressed, afraid of suicide, and apparently having persecutory delusions. Dr. Sorenson began treating respondent in May 1976 at which time he evaluated Mr. Marcal's condition as an "agitated depression," also known as a "manic depressive syndrome," characterized by blurred judgment, emotional mobility, extreme anxiety and an appearance of grandiosity to hide that anxiety. Dr. Sorenson noted that Mr. Marcal's hyperactivity became increasingly aggressive and that Mr. Marcal had not responded to treatment during his investigation and indictment. Dr. Sorenson further testified that respondent contacted him and resumed treatment in November 1981, after his release on parole from Jackson Barracks. Dr. Sorenson testified that, although Mr. Marcal can be anxious when talking about the past, he does not show any signs of mental illness at this time and has been constructively working out his personal problems.
The Committee produced no countervailing evidence on the issue of mitigation.
We agree with the finding of the Commissioner, concurred in by the Committee, that respondent has been convicted of serious crimes which reflect adversely upon his moral fitness to practice law. Hence, disciplinary action is warranted. We further agree, after reviewing the evidence of mitigating circumstances as set forth above, that respondent should not be disbarred but rather suspended from the practice of law for an appropriate period of time. Mr. Marcal clearly has a record of high integrity except for this one blemish, and his behavior since his conviction, particularly while at Jackson Barracks, is supportive of his cause. We are likewise impressed by the quality of the persons who testified on his behalf. While respondent cannot complain about the protracted disciplinary proceedings because the delays were caused primarily at his instance while exercising his legal rights, we recognize nonetheless that they have been a cloud over his head for a long time and have had a tremendous psychological and economic impact on him. The Commissioner considered that respondent be suspended from the practice of law for a period of two years commencing from July 2, 1982 (a year subsequent to his suspension on July 2, 1981). The Louisiana State Bar Association, through its Committee on Professional Responsibility, concurred in the Commissioner's recommendation as to the appropriate discipline. We agree.

*51 DECREE
For the reasons assigned, it is ordered, adjudged and decreed that Joseph N. Marcal III be suspended from the practice of law in Louisiana for a period of two years commencing July 2, 1982.
NOTES
[1] 388 So.2d 656 (La.1980).
[2] 388 So.2d 663 (La.1980) (on rehearing).
[3] Article 15, section 8, paragraph (7)(a) through (d) of the Articles of Incorporation of the Louisiana State Bar Association provide:

(7) After the conviction has become final, that is, all appeals have been concluded or exhausted, the procedure shall be as follows:
(a) The Committee will file a petition in the Supreme Court seeking disbarment or any other remedy that the Committee deems appropriate, and the petition will be served upon the respondent in the same manner as in ordinary proceedings.
(b) When issue is joined by answer by the respondent, a Commissioner will be appointed by the Supreme Court to represent the Court in the same manner as in ordinary proceedings.
(c) At the hearing before the Commissioner, the certificate of the conviction of the respondent shall be conclusive evidence of his guilt of the crime for which he has been convicted.
(d) At the hearing based upon a respondent's conviction of a crime, the sole issue to be determined shall be whether the crime warrants discipline, and if so, the extent thereof. At the hearing the respondent may offer evidence only of mitigating circumstances not inconsistent with the essential elements of the crime for which he was convicted as determined by the statute defining the crime.
[5] La. Const. art. 5, § 5(B) (1974).