DIXON, Chief Justice.
The Louisiana State Bar Association, through its Committee on Professional Responsibility, instituted this disciplinary proceeding against members Patrick H. Wright and William E. Armstrong. Wright and Armstrong were convicted in the United States District Court for the Western District of Louisiana on February 13, 1985, for having violated the Hobbs Act,[1] and were each sentenced to serve two years in prison. The United States Fifth Circuit Court of Appeals affirmed (2-1) the convictions.[2] Both men served nine and one-half months of their two year sentences in federal prison. The committee’s petition for disciplinary action based on the finality of these convictions[3] was filed on May 19, 1987, and Wright and Armstrong timely answered. This court then appointed Calvin C. Fayard of Denham Springs to act as commissioner, deferred the commissioner’s hearing until the respondents could be present to present their defense, and ordered an interim suspension effective September 8, 1987.
The commissioner conducted his hearing on May 27, 1988 and issued his report on August 28, 1988, finding that respondents had been convicted of a serious crime that warranted disciplinary action. The commissioner also found, however, that “respondents neither actively desired the criminal consequences of their actions, nor ever intended in any way to break the law.” Based on that finding and on the unrebut-ted evidence of respondents’ good character and service to the community, the commissioner recommended suspension from practice “for a period of time current with the time served under the jail sentence and the term of probation imposed by the federal court.” The committee disagreed with portions of the commissioner’s findings of fact and conclusions of law and recommended a suspension of two to two and one-half years.
When an attorney has been convicted of a crime, the sole issue to be determined in a *281 disciplinary hearing before this court is whether the crime warrants discipline, and if so, to what extent. Louisiana State Bar Association Articles of Incorporation art. XV, § 8(a)(7)(d). The conviction itself is conclusive evidence of guilt. Id. § 8(a)(7)(c). The degree of discipline to be imposed depends in each case on the seriousness of the offense, the circumstances of the offense, and the extent of aggravating and mitigating circumstances. Louisiana State Bar Association v. Garraway, 520 So.2d 400, 401 (La.1988); Louisiana State Bar Association v. Price, 495 So.2d 1311 (La.1986); Louisiana State Bar Association v. Vesich, 476 So.2d 811, 814 (La.1985).
Both parties to this proceeding, as well as the commissioner, agree that the conduct for which Wright and Armstrong were convicted constitutes serious misconduct that warrants the imposition of discipline.[4] This court must now examine the circumstances leading to the conviction, as well as the evidence of aggravating and mitigating factors, to determine the nature and extent of that discipline.
CIRCUMSTANCES UNDERLYING THE CONVICTION
As set out by United States Fifth Circuit Judge E. Grady Jolly in the opinion affirming the convictions, the factual circumstances underlying this disciplinary proceeding are as follows:
“The defendant Patrick Wright was City Attorney for Monroe, Louisiana. He hired the defendant William Armstrong as an assistant city attorney. Wright resigned in July 1980 to enter private practice, while Armstrong remained assistant city attorney until he was removed in March 1984. Between late 1980 and mid-1983, Armstrong was the only assistant city attorney handling traffic offenses.
Wright s private practice included personal injury, real estate, domestic relations, and defense of ‘driving while intoxicated’ (DWI) cases. He defended a large number of DWI cases that were prosecuted by Armstrong. Some of these cases went to trial, some ended with a guilty plea, and some resulted in ‘DA’s probation’ for Wright’s clients. ‘DA’s probation’ is a practice common in Monroe City Court whereby the city agrees to defer prosecution on the condition that the defendant avoids further trouble. After one year of DA’s probation, the charges are generally allowed to prescribe. The decision to use DA’s probation is discretionary with the city attorney.
The convictions of Wright and Armstrong resulted from allegations involving six of Wright’s clients: Burns, Hill, Gohn, Newman, Tallant, and Mathieu. The conspiracy count was proved with evidence relating to all six cases, while the substantive counts were proved with evidence from only the Burns case. In each of the six cases, the defendant was arrested and charged with DWI, but no prosecution occurred.
The Hill case was ‘nol prossed’ after the charges were deemed to have prescribed. The Gohn, Newman, Tallant, and Math-ieu cases were either reset or continued without date certain under DA’s probation, and no further action was taken on them. The Burns case, however, was more complicated. An arrest warrant was sworn out for Burns in December 1980, but by March 1982, having not been executed, it was recalled by Armstrong. Service was never successfully made on Burns, and Armstrong recalled the warrant, ostensibly because the DWI charges against Burns had prescribed under La.Code Crim.Proc. art. 578 (West 1981).
*282 When Burns heard that there was a warrant outstanding for his arrest, he contacted Armstrong concerning his situation. In the course of their conversation, Armstrong suggested that Burns retain a lawyer to institute a civil action for injuries sustained by Burns in the accident. Armstrong recommended several attorneys, including Wright. Burns retained Wright to represent him in a civil action and signed a one-third contingent fee contract with Wright. Burns’ lawsuit was filed in May 1981, and was handled almost entirely by Jack Wright, Wright’s young associate. After the court ruled on a motion in limine and admitted the results of a blood alcohol test showing that Burns had been legally intoxicated at the time of the accident, the case was settled in June 1982 for $35,000.
After the settlement was agreed upon, Wright told Jack Wright that Armstrong was to receive a referral fee of approximately one-third of the attorney’s fee. When Jack Wright protested this arrangement, Wright spoke to Armstrong about the size of the fee, and the two of them agreed that Armstrong should take $3,000. Burns received approximately $21,000 after expenses, and Jack Wright with co-counsel shared the remainder. Eventually, some complaint was made (by whom it is unclear), and Patrick Wright and William Armstrong were indicted for having violated the Hobbs Act, 18 U.S.C. § 1951, and for conspiring to violate the Act. All of the counts involved alleged extortion by the City Attorney’s Office of Monroe, Louisiana, in connection with the prosecution of DWI cases in Monroe City Court. Both defendants were convicted in a bench trial on one count of conspiracy (Count IV), having waived their right to a trial by jury. Armstrong was additionally convicted on one count of a substantive violation, i.e., that under color of official right, he solicited and received from Wright $3,000 in return for preventing the DWI prosecution of Wright’s client, Burns (Count V). Wright was convicted on one count of aiding and abetting Armstrong in the substantive violation (Count VI).”
The majority of the court of appeal panel determined that the required nexus with interstate commerce had been met in order to sustain the conviction under the Hobbs Act. The majority also found that the evidence was sufficient to support the trial judge’s decision.
In a vigorous dissent, Judge Brown declared that the trial judge was “flatly wrong” in his interpretation of Louisiana law concerning prescription: “[h]ad he realized that prosecution was indeed barred — it is clear the judge could not have found these attorneys guilty beyond a reasonable doubt.” Wright, 797 F.2d at 254. Judge Brown also doubted that the prosecution had proved the required nexus with interstate commerce in order to sustain a Hobbs Act violation. Even so, he characterized the behavior of Wright and Armstrong as being “flagrant transgessions of elemental legal ethics” that “would merit severe disciplinary action by either the Louisiana Bar or the Louisiana court, or both.” Id.
Part of the consideration in determining an appropriate penalty is an analysis of the evidence upon which the conviction has been obtained. See, e.g., Louisiana State Bar Association v. Garraway, supra, at 402 (three month suspension as result of “technical” violation of Hobbs Act); Louisiana State Bar Association v. Vesich, supra at 813-14 (“barely sufficient” evidence sustaining conviction a mitigating factor).
In his report, the commissioner noted that the federal convictions of Wright and Armstrong depended upon “a crucial construction of state criminal law in order to establish the necessary predicate for a Hobbs Act offense....” The act requires that there be a “quid pro quo,” that is, something given in return for a favor:
“The ‘quid pro quo’ found by the trial judge was dismissal by Armstrong of an outstanding DWI prosecution against a personal injury client of Wright’s, accompanied by payment of a referral fee by Wright to Armstrong when the client’s case settled. In order to sustain the *283 Hatch [sic] Act charges, the court had to find that the public official had some discretion to act or not to act in the performance of his duties, which official action or inaction could be influenced by payment of a bribe.
Whether the dismissal by Armstrong of an outstanding first-offense DWI prosecution grounded on a stale arrest warrant and an inadmissible intoxication test constitutes the requisite ‘quid pro quo’ of a Hatch [sic] Act conviction appears highly debatable. This close legal call sparked a vigorous dissent from Judge Brown of the U.S. Fifth Circuit: ‘Had the judge ... realized that the [DWI] prosecution was indeed barred — it is clear [he] could not have found these attorneys guilty beyond a reasonable doubt.’
In dissent Judge Brown succinctly points out that ‘[w]ith Armstrong’s valid argument for not prosecuting [the DWI], the government’s entire case unravels.’ The authorities articulated for Armstrong’s decision to dismiss the DWI prosecution are impressive and within the mainstream of accepted jurisprudence concerning such matters.” (Citations omitted).
The committee in its brief to this court emphasizes the position of the United States Fifth Circuit in its affirmation of the convictions. The Fifth Circuit determined that it was unnecessary to decide whether the warrant had prescribed because Armstrong had failed to prosecute Burns between December 1980 and December 1981. Finding no evidence that Armstrong had withdrawn the Burns warrant in the course of a routine purging, the court agreed with the trial judge that the evidence supported the conclusion “that Armstrong accorded special treatment to that particular warrant.” Wright, 797 F.2d at 252. The respondents, however, dispute this conclusion, noting that the warrant was in the control of the police department during this time and that the admissibility of the blood alcohol test was in doubt.[5] This factor, along with the circumstances outlined above, argues against disbarment, the usual sanction in cases such as this involving “serious criminal conduct, a necessary element of which includes intentional interference with the administration of justice.” ABA Standards for Imposing Lawyer Sanctions 5.11 (Failure to Maintain Personal Integrity).
AGGRAVATING AND MITIGATING FACTORS
In the disciplinary hearing before Commissioner Fayard, the committee presented no evidence of aggravating factors and called no witnesses, resting its case entirely on proof of the respondents’ convictions. The respondents presented numerous character witnesses, including Judges Elvis C. Stout, of the Monroe City Court, and William Norris III, of the Second Circuit Court of Appeal. The testimony of both judges impressed the commissioner, as did the testimony of the respondents’ peers and that from individuals in their social, political and religious communities.
In its brief to this court, however, the committee emphasized that the respondents breached the duty they owed to the public, that being the duty to maintain personal integrity and the duty to maintain the public trust. By intentionally interfering with the administration of justice, Wright and Armstrong, as officers of the court, caused injury to the system of justice. This court agrees with the committee that corrupting our system of justice strikes at the heart of the legal system and tarnishes the ideal of justice. That ideal may be fragile and might survive only because the public perceives that the system operates fairly. The misconduct of the respondents lends support to the belief that justice is bought through influence and money.
Commissioner Fayard determined, however, that Armstrong “failed to maintain his personal integrity as a lawyer, and has failed to maintain the public trust in his capacity as a public official solely as a result of his conviction.” (Emphasis by the commissioner). Likewise the commis *284 sioner determined that Wright “failed to maintain his personal integrity as a lawyer and has engaged in improper communications with individuals in the legal system solely as a result of his conviction.” (Emphasis by the commissioner). Because the record showed no evidence of actual or potential injury, the commissioner found only slight injury produced by the misconduct.
As mitigating circumstances, the commissioner found the following:
“(a) both Respondents lack prior disciplinary records;
(b) the misconduct of both respondents does not show dishonesty or selfish motives at play;
(c) there has been full, free and complete cooperation by respondents in the conduct of the Commissioner’s inquiry;
(d) the evidence supports the finding that the character and reputation of each respondent, both before and after conviction, remains virtually intact within their geographic communities; and
(e) both respondents have suffered imposition of severe penalties in the form of federal prison sentences with mandatory jail time, loss of civil rights due to their felony convictions, acute embarrassment produced by a highly publicized trial, and loss of financial security due to confinement and the resultant interruption of their legal practices brought about by the suspension of their licenses to practice law.”
See ABA Standards for Imposing Lawyer Sanctions 9.3 (mitigating factors).
Finally, the commissioner determined that respondents’ continued claims of innocence of the charges and of the crimes of which they were convicted constituted a reasonable attitude in the light of the close questions of law presented by this case.
CONCLUSION
The crimes of which Armstrong and Wright were convicted are serious crimes requiring disciplinary action. Neither the commissioner nor this court is called upon to decide the propriety of the respondents’ conduct concerning the fee sharing arrangement that led to these convictions.[6] In view of the circumstances underlying the convictions, the mitigating factors presented to this court, and the absence of substantial aggravating factors[7] this court agrees with both the committee and the commissioner that the discipline imposed should be a substantial suspension rather than disbarment. Accordingly, we conclude, as did the commissioner, that the appropriate discipline is a twenty-one month suspension from the practice of law, commencing on the date of the respondents’ interim suspension, September 18, 1987, and ending on June 12, 1989, the last day of respondents’ parole.
DECREE
For the reasons assigned, we order that Patrick H. Wright, Jr. and William E. Armstrong be suspended from the practice of *285 law for a period of twenty-one months, commencing September 18, 1987, and ending on June 12, 1989. Respondents shall bear all costs of these proceedings.
LEMMON, J., concurs.
CALOGERO, J., recused.

. 18 U.S.C. § 1951 (1982). Wright and Armstrong were each found guilty of one substantive violation of the Act and of one count of conspiracy to violate the Act.

. United States v. Wright, 797 F.2d 245, reh’g denied, 804 F.2d 843 (5th Cir.1986), cert. denied, 481 U.S. 1013, 107 S.Ct. 1887, 95 L.Ed.2d 495 (1987).

.Louisiana State Bar Association Articles of Incorporation art. XV, § 8(a)(7).

. The offense underlying this proceeding involves conduct that may be considered public bribery under R.S. 14:118. This court has imposed discipline for such conduct ranging from a ninety day suspension to disbarment. See, e.g., Louisiana State Bar Association v. Garraway, 520 So.2d 400 (La.1988) (90 day suspension); Louisiana State Bar Association v. Marcal, 430 So.2d 47 (La.1983) (two year suspension); Louisiana State Bar Association v. Pitard, 462 So.2d 178 (La.1985) (disbarment).

. In Burns’ civil suit, the test results were ruled admissible. The judge's decision on this motion in limine was not appealed, however, because Burns settled the case.

. Respondents concede in their brief, and this court agrees, that the payment of any referral fee in the Burns case was inappropriate because Armstrong did no work on the case.

. The ABA Standards for Imposing Lawyer Sanctions, 9.22, enumerate the factors that may be considered as aggravating:
"(a) prior disciplinary offenses;
(b) dishonest or selfish motive;
(c) a pattern of misconduct;
(d) multiple offenses;
(e) bad faith obstruction of the disciplinary proceeding by intentionally failing to comply with rules or orders of the disciplinary agency;
(f) submission of false evidence, false statements, or other deceptive practices during the disciplinary process;
(g) refusal to acknowledge wrongful nature of conduct;
(h) vulnerability of victim;
(i) substantial experience in the practice of law;
(j) indifference to making restitution.”
In its brief to this court, the committee asserts that the respondents had dishonest or selfish motives and that both have substantial experience in .the practice of law (Wright was admitted to the bar on August 31, 1967, while Armstrong was admitted on April 20, 1979). The committee presented only the certificate of conviction to the commissioner, however. Thus, the commissioner had no evidence of aggravating factors to consider in his recommendation.