389 So.2d 51 (1980)
LOUISIANA STATE BAR ASSOCIATION
v.
John B. LEVY.
No. 65156.
Supreme Court of Louisiana.
October 6, 1980.
*52 Thomas O. Collins, Jr., New Orleans, Sam J. D'Amico, Baton Rouge, Roland J. Achee, Shreveport, Wood Brown, III, New Orleans, Leonard Fuhrer, Alexandria, Harold J. Lamy, New Orleans, Edgar H. Lancaster, Jr., Tallulah, Alfred S. Landry, New Iberia, A. Russell Roberts, Metairie, John B. Scofield, Lake Charles, for plaintiff-applicant.
John R. Martzell, Martzell, Montero & Mamothe, New Orleans, for respondent.
LEMMON, Justice.
This is a disciplinary proceeding instituted by the Louisiana State Bar Association, arising out of respondent's conviction in federal court of transferring two checks in the total amount of $100,000 in interstate commerce with knowledge that the money represented by the checks had been secured from an interim lending agency by fraud in violation of 18 U.S.C. § 2314.
At the time of the transaction in question respondent was not actively engaging in the practice of law, but was an officer of Commercial Leasing and Financing, a corporation then engaged in constructing a $2,000,000 condominium complex.[1] According to the federal judge's statement in ruling on post-trial motions, the "project was severely undercapitalized from the outset".
Commercial's loan agreement with the lending agency provided a procedure whereby the general contractor submitted periodic invoices of work completed and Commercial forwarded the invoices with a partial draw request to the lending agency. Prior to March, 1974 Commercial made seven such draws and disbursed funds to the contractor, but because of lack of capital and a private agreement with the contractor, Commercial paid only part of the amount then due to the contractor from the proceeds of those draws.
On March 19, 1974, Commercial, without notice to the financing agent, conveyed title to the real estate to Marbane Investments.
On March 29, 1974 Commercial sent draw request No. 8 for $160,000 to the financing agent. Between March 29 and April 11 respondent drew checks totaling $271,000 payable to Marbane on Commercial's Beaumont, Texas bank account. On April 4 and 5 respondent drew two checks (which were the subject of the federal charges) in the amount of $45,000 and $55,000 respectively on Commercial's Lafayette, Louisiana bank account and deposited the checks in Commercial's Beaumont account.[2] The two checks cleared through normal banking channels and were transmitted back to Louisiana in interstate commerce. Then, between April 11 and April 18, more than $200,000 was transmitted from Marbane's account back to Commercial's account.
The evidence at the federal trial, while not showing the ultimate disposition of the funds represented by the $45,000 and $55,000 *53 checks, did establish the contractor received only $9,000 of the $160,000 due under the terms of the draw request.
Respondent was convicted of violating the cited federal statute by transporting securities or money, known to be fraudulently obtained, in interstate commerce, apparently (as observed by the trial judge in ruling on post-trial motions) because the jury believed respondent intended, when submitting the draw request, to pay the funds to Marbane instead of to the contractor.[3] Thus, the funds that were represented by the two checks in question were found to constitute securities or money obtained by fraud.[4] The violation constituted a felony under federal law (although the underlying misconduct of using the proceeds of an interim financing draw for a purpose other than settlement of claims under the contract would have been a violation under state law of R.S. 14:202, a misdemeanor).
The trial judge sentenced respondent to serve one year and a day on each count, the sentences to run concurrently.[5] The court of appeal affirmed, observing "[t]his is undoubtedly a close case". United States v. Levy, 579 F.2d 1332 (5th Cir. 1978).
Respondent thereafter served three and one-half months, at which time the sentencing judge reduced the sentence to time served. Respondent was then immediately released, without probation, in July, 1979.
The Bar Association, although a hearing had been held, had not recommended suspension pending appeal. After the conviction was affirmed, the Bar Association instituted this proceeding. A commissioner appointed by this court conducted a hearing in March, 1980 and filed a report, finding that disciplinary action was warranted and recommending a public reprimand and a six-month suspension from the practice of law. Each party filed an opposition to the report, contesting only the appropriateness of the discipline recommended.
At the commissioner's hearing respondent presented evidence of numerous mitigating circumstances not inconsistent with the essential elements of the crime. See Articles of Incorporation, Art. XV, § 8(7)(d).[6] We now discuss the mitigating circumstances presented by respondent in order to determine the extent of the discipline to be imposed.
As the commissioner noted, the crime was not directly connected with the practice of law. While respondent was a lawyer at the time and had the duty to obey and uphold all laws, we simply note that this offense did not involve misuse of his license to practice law.
Another consideration is the attitude of the federal courts toward this particular case. The federal trial judge characterized the circumstantial evidence of intent as "weak", but held the evidence sufficient to raise a jury question. The federal appellate court also observed this was a "close case". Although the Bar Association points out the closeness refers primarily to federal jurisdiction, it is significant to note respondent's conduct was prosecutable under Louisiana law only as a misdemeanor, and the applicability of the federal felony statute is extremely significant as to the seriousness of the crime.
*54 A significant mitigating circumstance is that no money came into respondent's possession in the transfer of funds which resulted in respondent's conviction. While the numerous transfers around that time may have been a "check kiting" scheme to divert attention from financial deficiencies, the transfer which formed the basis of the conviction was simply a moving of corporate funds from one corporate bank account to another. Neither the owner, the contractor, nor the lender suffered any loss as a result of transferring funds from one corporate account to another.
The misconduct in this case occurred, not in respondent's transferring corporate funds from one corporate bank account to another (the transfer in interstate commerce being the transmission of the checks back to the Louisiana drawee bank) or even in requesting the lending agency to pay a draw (the work had been performed and the payment was due under the contract), but in respondent's failure to pay the proceeds of the draw request to the contractor under the terms of the contract. While respondent undoubtedly should have paid the funds to the contractor and exercised poor business judgment (and incurred civil and criminal misdemeanor liability) by applying the funds elsewhere in the undercapitalized project, the federal felony violation did not flow from this misconduct, but attached only after respondent shifted corporate funds.
The impact of these mitigating circumstances was reflected in the light sentence imposed by the federal court (maximum sentence was ten years) and the subsequent reduction of that sentence to time served. The most important mitigating circumstance, however, was respondent's voluntary withdrawal from the practice of law during this proceeding, although the Bar Association did not request suspension and although respondent had no other means of livelihood to support his five children (three in college and one in a school for retarded children). Respondent voluntarily limited himself to doing research for other attorneys in a paralegal capacity, explaining:
"[I]n deference to what the Bar Association has seen fit to do for me in allowing me up until this time to be not suspended, and in deference to the proceedings and the dignity of the Bar Association and the Court, I have more or less imposed an exile upon myself until such time as the matter can be satisfactorily cleared up by all parties concerned and to the satisfaction of the Court and the Bar Association; and I think it's in keeping with the proper demeanor that is to be expected of a professional man and the courtesy that I think I owe to the Bench and Bar."
When all of these mitigating circumstances are considered, as well as the facts that respondent served a prison sentence, suffered a personal financial loss of $80,000 in the project (which was actually completed), suffered a further loss of professional income from the self-imposed exile, and displayed the commendable attitude of remorse and respect by voluntarily refraining from practicing law, we have decided to impose a suspension (as suggested in brief by respondent's counsel) of three and one-half months, the amount of time the federal judge (who was most familiar with the overall circumstances) decided was sufficient incarceration for the overall conduct involved.
Accordingly, it is ordered that John Bernard Levy be suspended from the practice of law in Louisiana for a period of three and one-half months from the date of this decree. All costs are assessed to respondent.
SUSPENSION ORDERED.
WATSON, J., dissents and assigns reasons.
WATSON, Justice, dissenting.
A public reprimand would be adequate disciplinary procedure, considering the totality of the circumstances, particularly the fact that the violation in question would have been a misdemeanor under Louisiana law, as noted by the majority. See R.S. 14:202.
Therefore, I respectfully dissent from the imposition of a suspension.
NOTES
[1] Respondent was not a shareholder, but had an interest dependent upon the success of the project.
[2] There were insufficient funds in Commercial's Lafayette bank account to cover those two checks without using the proceeds of draw request No. 8. The proceeds of the draw request were received on April 10 and deposited into Commercial's Lafayette bank account.
[3] Respondent's argument, apparently rejected by the jury, was that he was entitled to pay the funds to Marbane, who was record owner of the real estate when the checks were written.
[4] On this point respondent contended that if any security was obtained by fraud, it was the $160,000 check for draw No. 8 and not the two checks upon which the charge was based.
[5] Under federal law this sentence permitted parole consideration.
[6] Section 8 is applicable when a respondent has been convicted of a crime. If the Committee on Professional Responsibility determines the crime is a serious crime reflecting on the attorney's moral fitness to practice law, this court may suspend the attorney pending the outcome of the disciplinary proceedings. After all appeals from the conviction are concluded, the conviction is conclusive evidence of guilt of the crime, and the sole issue to be determined is whether the crime warrants discipline, and if so, the extent thereof. At the hearing the respondent may offer evidence only of mitigating circumstances not inconsistent with the essential elements of the crime.