MARCUS, Justice.
The Louisiana State Bar Association, through its Committee on Professional Responsibility, instituted disciplinary proceedings against Edmond G. Miranne, Sr. and Edmond G. Miranne, Jr., members of said association. The Committee’s petitions for disciplinary action were based upon respondents’ final convictions of “conspiracy, false statements, and mishandling of funds” in connection with loans made by Security Homestead Association, a federally-insured savings and loan association. Miranne Sr. was also convicted of perjury. He was president and chief executive officer of Security, while Miranne Jr. was Security’s attorney and a board member.
On January 29, 1981, Edmond G. Mir-anne, Sr. and Edmond G. Miranne, Jr. were indicted in the United States District Court for the Eastern District of Louisiana, New Orleans Division. Count 1 charged the Mirannes and a real estate developer, Burl Mahl, with conspiracy in violation of 18 U.S.C. § 371.[1] Counts 2-51 charged the *643 Mirannes with the offense of making false statements in loan applications in violation of 18 U.S.C. §§ 1014[2] and 2[3]. Counts 52-101 charged the Mirannes with misapplication of funds belonging to Security, in contravention of 18 U.S.C. §§ 657[4] and 2. Counts 102 and 103 charged only Miranne Sr. with perjury in violation of 18 U.S.C. § 1621.[5]
The essence of the Mirannes’ offenses grew out of the approval of a series of installment loans to Mahl on three occasions. While Mahl stated on the loan applications that the purpose of each loan was to “renovate property,” in fact, he illegally used the funds to purchase various properties. Because the funds were to be used to purchase property, they should have been made as first mortgage loans rather than installment loans. Miranne Sr. approved the loans, knowing that Mahl did not yet own the properties, while Miranne Jr. passed acts of sale and performed title examinations of the various properties.
On August 12, 1981, following convictions [6] resulting from their pleas of not guilty, the Mirannes were sentenced to two years imprisonment on each count, to run concurrently. Execution of these sentences was suspended and the Mirannes were placed on probation for a period of three years. Miranne Sr. was fined $27,-500, ordered to perform 320 hours of public service work, and to pay $130,000 to Security in restitution for the loss it suffered when Mahl defaulted on the loans. Mir-anne Jr. was fined $27,775, ordered to perform 320 hours of public service work and to submit to an alcoholic rehabilitation program.
Based upon respondents’ convictions of the aforesaid crimes and its determination that these were “serious crimes” reflecting on respondents’ moral fitness to practice law, the Committee on Professional Re *644 sponsibility filed petitions in this court on December 21, 1981, seeking orders suspending the Mirannes from the practice of law and ordering the Committee to institute the necessary disciplinary proceedings.[7] On January 15, 1982, this court granted the requested orders. Respondents’ petition for reconsideration of the orders was denied. 410 So.2d 1138 (La.1982).
Subsequently, on August 6, 1982, the Committee filed petitions in this court seeking disciplinary action against respondents under the provisions of Article 15, section 8, paragraph 7(a) through (d) of the Articles of Incorporation of the Louisiana State Bar Association.[8] After issue was joined, a Commissioner was appointed by this court. A consolidated hearing was conducted on September 12, 1983, at which each respondent was afforded full and unrestricted opportunity to present any and all evidence of “mitigating circumstances not inconsistent with the essential elements of the crime for which he was convicted....” In the formal report of the Commissioner to this court, it is stated that the Commissioner found the offenses for which respondents were convicted to be felonies under federal law constituting “serious offenses” warranting disciplinary action, the only question being as to the extent of such discipline. The Commissioner recommended that respondents be suspended from the practice of law for three years, dating retroactively from this court's suspension on January 15, 1982. Respondents filed their concurrence to the report and recommendation of the Commissioner. The Committee on Professional Responsibility concurred in the findings of fact and conclusions of law of the Commissioner but disagreed with his recommendation for the discipline to be imposed. It urged that respondents be suspended from the practice of law for one year from the date of this court’s decision. The matter was then submitted to this court under our original jurisdiction.[9]
The sole issue to be determined by this court in a disciplinary proceeding based on a conviction of a crime is whether “the crime warrants discipline, and if so, the extent thereof.” Article 15, section 8, paragraph 7(d) of the Articles of Incorporation of the Louisiana State Bar Association; LSBA v. Marcal, 430 So.2d 47 (La.1983).
At the hearing before the Commissioner, respondents introduced evidence of mitigating circumstances.
Miranne Sr. is sixty-four years old. He graduated from law school and was admitted to practice in Louisiana in 1948. His father was secretary-treasurer and manager of Security, and Miranne Sr. began working there as an office boy at the age of twelve. Upon graduation from law school, he went into practice with a New Orleans attorney. One year later, he assumed the position of notary public for Security, while continuing in private practice. In 1957, respondent became the attor *645 ney for Security and during that same year he became vice-president. Miranne Sr. became president and chief executive officer of Security in 1967. When he assumed this position, the assets of the savings and loan were about $40 million; when he left his position in 1981, the assets were in excess of $500 million.
At the hearing, Miranne Sr. testified about the incidents that led to his federal convictions. He maintained that at the time he approved the loans to Mahl, he did not realize that the home improvement loans could not be used to purchase property. Respondent’s perjury conviction resulted from his denial in a deposition that he had any other “business transactions” with Mahl. At the hearing, however, he reiterated his claim that he had rejected Mahl’s proposed purchase of a building owned by Miranne Sr. Respondent further indicated that he had no personal interest in the properties Mahl purchased with the Security loans. He noted that the law firm of Miranne and Miranne did receive payment for legal services rendered in connection with the acts of sale and title examinations.
When Miranne Sr. learned that he was to be indicted, he took a voluntary leave of absence from his position at Security. He subsequently lost his position there, as well as his pension and insurance. Since his suspension from practice, Miranne Sr. has derived the majority of his income from investments; he has also conducted real estate operations. Pursuant to his federal sentence, Miranne Sr. has done weekly volunteer service at the main office of the Associated Catholic Charities of New Orleans and has paid the $27,500 fine. He has made financial restitution to Security in the amount of $130,000 for the loss it suffered when Mahl defaulted on the loans.
Edmond G. Miranne, Jr. is 37 years old. He is married and has two children. He was admitted to practice in Louisiana in 1973, when he began to practice law with his father’s firm. In mid-1974, Miranne Jr. became the attorney for Security. He was made a director in the same year. He resigned from these positions in 1981, upon learning that he was to be indicted. Since then, he has been trying to develop his own business and receives a salary from his father for assisting him in his investments. Miranne Jr.’s involvement in the loan transactions with Mahl comprised passing the cash sales and performing title examinations of the properties Mahl purchased. He took no part in preparing or offering any information listed on the loan applications. He testified that he had contemplated a partnership with Mahl which would have given him equity in the properties Mahl purchased with the Security loans. This partnership never came to fruition. Miranne Jr. has paid the fine imposed by his federal sentence and is currently doing public service work at St. Vincent’s Infant Home, which he intends to continue after his public service time is completed. While his doctor is not convinced that he has a drinking problem, he plans to enroll in an alcoholic rehabilitation program to fulfill his sentence. There was also testimony that both Mirannes have performed their public service work very satisfactorily and have established very good reputations in the community for honesty and dependability.
We agree with the finding of the Commissioner, concurred in by the Committee, that respondents have been convicted of serious crimes which reflect adversely upon their moral fitness to practice law. Hence, disciplinary action is warranted. We further agree, after reviewing the evidence of mitigating circumstances as set forth above, that respondents should not be disbarred but rather should be suspended from the practice of law for an appropriate period of time. Both the Mirannes have established reputations in the community as good attorneys and honest businessmen. There is no evidence that either Miranne has ever been the subject of a previous complaint about his professional activities. Miranne Sr. has made restitution to Security and thus any financial loss caused by respondents’ conduct has been eliminated. The record reflects that neither of the Mir-annes had any personal interest in the properties Mahl purchased with the improp *646 erly obtained loans. While the Commissioner recommended suspension for three years, dating retroactively to January 15, 1982, the Committee recommended suspension for one year from the date of this court’s decision (roughly a four-year suspension). We consider suspension from the practice of law for a period of three and one-half years, commencing January 15, 1982, as an appropriate penalty under the circumstances.
DECREE
For the reasons assigned, it is ordered, adjudged and decreed that Edmond G. Mir-anne, Sr. and Edmond G. Miranne, Jr. be suspended from the practice of law in Louisiana for a period of three and one-half years commencing January 15, 1982.
LEMMON, J., dissents and assigns reasons.
LEMMON, Justice, dissenting.
I dissent from imposing any penalty in excess of the three-year suspension recommended by the Commissioner, especially in view of the fact that the federal district judge who heard the evidence concluded that the crime was not serious enough to warrant any confinement.

. 18 U.S.C. § 371 provides:
If two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy, each *643 shall be fined not more than SI0,000 or imprisoned not more than five years, or both.
If, however, the offense, the commission of which is the object of the conspiracy, is a misdemeanor only, the punishment for such conspiracy shall not exceed the maximum punishment provided for such misdemeanor.

. 18 U.S.C. § 1014 provides in pertinent part:
Whoever knowingly makes any false statement or report ... for the purpose of influencing in any way the action of ... any institution the accounts of which are insured by the Federal Savings and Loan Insurance Corporation ... upon any application ... or loan ... shall be fined not more than $5,000 or imprisoned for not more than two years or both.

. 18 U.S.C. § 2 provides:'
(a) Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.
(b) Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal.

. 18 U.S.C. § 657 provides in pertinent part:
Whoever, being an officer ... of or connected in any capacity with ... any institution the accounts of which are insured by the Federal
Savings and Loan Insurance Corporation ... willfully misapplies any moneys ... belonging to such institution or pledged or otherwise intrusted to its care, shall be fined not more than $5,000 or imprisoned not more than five years.

. 18 U.S.C. § 1621 provides:
Whoever—
(1) having taken an oath before a competent tribunal, officer, or person,' in any case in which a law of the United States authorizes an oath to be administered, that he will testify, declare, depose, or certify truly, or that any written testimony, declaration, deposition, or certificate by him subscribed, is true, willfully and contrary to such oath states or subscribes any material matter which he does not believe to be true; or
(2) in any declaration, certificate, verification, or statement under penalty of perjury as permitted under section 1746 of title 28, United States Code, willfully subscribes as true any material matter which he does not believe to be true;
is guilty of perjury and shall, except as otherwise expressly provided by law, be fined not more than $2,000 or imprisoned not more than five years, or both. This section is applicable whether the statement or subscription is made within or without the United States.

. The jury found Miranne Sr. guilty of one count of conspiracy, 25 counts of making false statements, 25 counts of misapplication of funds and two counts of perjury. Miranne Jr. was found guilty of one count of conspiracy, 50 counts of making false statements and 50 counts of misapplication of funds.

. This action was taken pursuant to Article 15, section 8, paragraphs (1) through (6) of the Articles of Incorporation of the Louisiana State Bar Association.

. Article 15, section 8, paragraph (7)(a) through (d) of the Articles of Incorporation of the Louisiana State Bar Association provide:
(7) After the conviction has become final, that is, all appeals have been concluded or exhausted, the procedure shall be as follows:
(a) The Committee will file a petition in the Supreme Court seeking disbarment or any other remedy that the Committee deems appropriate, and the petition will be served upon the respondent in the same manner as in ordinary proceedings.
(b) When issue is joined by answer by the respondent, a Commissioner will be appointed by the Supreme Court to represent the Court in the same manner as in ordinary proceedings.
(c) At the hearing before the Commissioner, the certificate of the conviction of the respondent shall be conclusive evidence of his guilt of the crime for which he has been convicted.
(d) At the hearing based upon a respondent’s conviction of a crime, the sole issue to be determined shall be whether the crime warrants discipline, and if so, the extent thereof. At the hearing the respondent may offer evidence only of mitigating circumstances not inconsistent with the essential elements of the crime for which he was convicted as determined by the statute defining the crime.

.La. Const, art. 5, § 5(B) (1974).