515 So.2d 797 (1987)
LOUISIANA STATE BAR ASSOCIATION
v.
Arnold J. ROSENTHAL.
No. 86-B-1762.
Supreme Court of Louisiana.
November 30, 1987.
*798 Thomas O. Collins, Jr., G. Fred Ours, Gerald F. Thomas, Roland J. Achee, Robert J. Boudreau, Robert M. Contois, Frank J. Gremillion, Carrick R. Inabnett, Harvey Lewis, Alfred S. Landry and Philippi P. St. Pe', for applicant.
George C. Stringer, Jr., for respondent.
Arnold J. Rosenthal, pro se.
COLE, Justice.

STATEMENT OF THE CASE
This is a disciplinary proceeding against Arnold J. Rosenthal, attorney and member of the Louisiana State Bar Association, brought by the Louisiana State Bar Association through its Committee on Professional Responsibility. This Court has original jurisdiction in disciplinary proceedings by the Louisiana State Bar Association against one of its members. Art. V, § 5(B), Louisiana Const. of 1974.
Attorney Rosenthal entered a plea of guilty on March 11, 1986 in the United States District Court for the Eastern District of Louisiana to two counts of wire fraud in violation of 18 U.S.C. § 2 and 18 U.S.C. § 1343. Subsequent to this conviction the Committee on Professional Responsibility instituted this action pursuant to the provisions of Section 8(a), Paragraph 7(a) through (d) of Article XV of the Articles of Incorporation of the Louisiana State Bar Association, which provides:
(7) After the conviction has become final, that is, all appeals have been concluded or exhausted, the procedure shall be as follows:
(a) The Committee will file a petition in the Supreme Court seeking disbarment or any other remedy that the Committee deems appropriate, and the petition will be served upon the respondent in the same manner as in ordinary proceedings.
(b) When issue is joined by answer by the respondent, a Commissioner will be appointed by the Supreme Court to represent the Court in the same manner as in ordinary proceedings.
(c) At the hearing before the Commissioner, the certificate of the conviction of the respondent shall be conclusive evidence of his guilt of the crime for which he has been convicted.
(d) At the hearing based upon a respondent's conviction of a crime, the sole issue to be determined shall be whether the crime warrants discipline, and if so, the extent thereof. At the hearing the respondent may offer evidence only of mitigating circumstances not inconsistent with the essential elements of the crime for which he was convicted as determined by the statute defining the crime.
The Committee made a determination that the crimes of which Mr. Rosenthal had been convicted constituted serious crimes which reflected upon his moral fitness to practice law. Thus, upon the Committee's petition, Mr. Rosenthal was suspended from the practice of law, effective October 30, 1986. A petition was thereafter filed for his disbarment, and a Commissioner was appointed on February 5, 1987 to receive evidence and to report to this court his findings of fact and conclusions of law. A hearing was conducted by the Commissioner on May 12, 1987 and the Commissioner filed his report on July 27, 1987 wherein he found that Mr. Rosenthal was convicted of a serious crime and recommended that he be disbarred or, alternatively, be suspended for a period of five years beginning on the date of his present suspension, October 30, 1986. The Committee has concurred in the Commissioner's findings of fact and conclusions of law, and recommends disbarment.

*799 ISSUE
The issue in this case is whether Mr. Rosenthal should be disbarred as the bar association recommends or whether a more appropriate discipline would be to suspend him for a period of time. Mr. Rosenthal does not suggest the crime of which he was convicted is not serious and does not warrant discipline. Rather, he offers several mitigating factors, suggesting disbarment is too harsh, and asking this court only to suspend him from the practice of law "for a time deemed appropriate by this court."

BASIS OF CONVICTION
The allegations underlying Mr. Rosenthal's plea to two counts of wire fraud were set forth in detail in the indictment against him. Those allegations can be summarized as follows.
In 1983 Rosenthal, along with Harry Caire and John B. Levy, set out to purchase a controlling interest in Continental Service Life and Health Insurance Company, a company which had at that time about $6,000,000 in reserve assets. Rosenthal, Caire and Levy formed the Continental Key Financial Group, Inc., the vehicle to be used in the purchase of control of Continental Service. Also, during this time period, Levy and Rosenthal were apparently law partners. The purchase price of the controlling interest sought to be purchased was $10,000,000 cash, a sum which Rosenthal, Levy and Caire did not have in either cash or assets.
The purchasers falsely represented at a hearing before the Commissioner of Insurance on the proposed sale that they had obtained a $10,000,000 commitment from Manufacturers Hanover's Trust Bank of New York. The purchasers told the sellers and the Commission they would pay cash for control of Continental Service, despite the fact they knew they did not have the cash or a commitment.
While the hearing before the Commissioner of Insurance was being conducted, the purchasers were attempting to sell some of Continental's assets so that they could use the money to purchase control of the company. Upon discovering this, the Commissioner issued an order prohibiting the purchasers from using any of Continental's assets without the permission of his office. Thereafter, the purchasers offered to substitute mortgages in the name of another corporation for the $6,000,000 in Continental's liquid assets. This was to be part of a "leveraged buyout" using Continental's assets to raise the purchase funds. However, the mortgages sought to be substituted were not fully marketable assets because the ownership of the underlying property involved was at issue in a lawsuit and a "lis pendens" had been filed. This lack of a clear title was not disclosed. Louisiana insurance companies are not permitted to invest in mortgages on property without clear title. Even so, the purchasers prepared a false title opinion showing clear title. Moreover, they misrepresented the value of the mortgages by $4,000,000. This deception was compounded by other misrepresentations to the Commissioner and the sellers, the net result being that mortgages with a face value of $5,000,000 on property without clear title were substituted for Continental's $6,000,000 in liquid assets.
After gaining control of Continental Service, the purchasers began depleting the assets of that company in direct violation of an order by the Insurance Commissioner prohibiting them from doing so. They withdrew $1,500,000 from various Continental Service accounts and purchased certificates of deposit. The certificates of deposit were used as security for loans made to purchasers for personal use. The loans were not repaid and the lending banks foreclosed and seized the certificates of deposit.
Also, insurance premiums were deposited into an account controlled by the purchasers, rather than to Continental Service accounts. Purchasers wrote checks for their personal use out of this account. As a result, insurance claims by policyholders were not paid properly and a three month backlog of unpaid claims was created. In addition, $100,000 in Continental Service's money was used to purchase, in Rosenthal's name, a share or shares in a limited partnership which purchased a professional *800 football team. Also, checks were written to the law firm of Levy and Rosenthal for legal services which were never rendered. Other irregular and improper acts took place and at one point the purchasers prepared a fraudulent corporate resolution in order to conceal a violation of the Insurance Commissioner's order. With the depletion of Continental's assets, the Commissioner of Insurance took over the company. Indictments of Rosenthal, Levy and Caire followed.

ANALYSIS
Faced with a twenty-six count indictment which alleged a scheme and artifice to defraud, and covering conspiracy, mail fraud and wire fraud, Mr. Rosenthal considered a plea bargain, but none was entered into prior to trial. However, after the State had presented its evidence and after the start of the defense case, Rosenthal pled guilty to two counts of wire fraud.
In this disciplinary proceeding Rosenthal argues mitigation. He notes, first, he was acting in his capacity as Chairman of the Board of the insurance company involved and did not commit the offense in the scope of his duty as an attorney representing a client. Also, at the hearing before the Commissioner appointed by this court, three character witnesses testified as to Rosenthal's good reputation and honesty. Over forty letters attesting to his good character were introduced. Rosenthal argues his conviction resulted not from an intent to violate the law and commit fraud, but because he was naive and "unwittingly trusted people he was working with and the other people involved in the matter." Finally, he had been a practicing attorney since 1955 until the time of his suspension in 1986 and had maintained an unblemished record until that time. He is presently sixty-four years of age.
The indictment charged felony crimes in violation of 18 U.S.C. §§ 2 and 1343, commission of, and a conspiracy to commit, mail and wire fraud. It is clear the essential elements of wire fraud to which Mr. Rosenthal pled, as set forth in the statute, include a conscious and knowing intent to defraud. See, United States v. Davis, 752 F.2d 963, 970 (5th Cir.1985); United States v. Rodgers, 624 F.2d 1303, 1306 (5th Cir. 1980).
By his plea of guilty to two counts of wire fraud, Rosenthal admitted knowledge and intent to defraud. The Commissioner noted:
Clearly, Mr. Rosenthal's actions constitute a violation of the Code of Professional Responsibility. Specifically, Disciplinary Rule 1-102(A)(3) states that a lawyer shall not "engage in illegal conduct involving moral turpitude." Further, Disciplinary Rule 1-102(A)(4) provides that a lawyer shall not "engage in conduct involving dishonesty, fraud, deceit or misrepresentation." The guilty pleas and convictions establish clear violations of both of these disciplinary rules.
With respect to the violations of Disciplinary Rules, the crimes here are serious ones. It is noteworthy that this was not an isolated event or offense; rather, the "scheme" and "artifice" was a prolonged course of conduct lasting over six months and including multiple fraudulent and deceitful actions and transactions. Indeed, these facts are unfortunate for all involved, not only the individual victims but also the public and the Bar. As stated in the case law, the commission of felonies by an attorney tends to lessen public confidence in the legal profession and to encourage disrespect for the law. Louisiana State Bar Ass'n v. Paige, 456 So.2d 990 (La.1984); Louisiana State Bar Ass'n v. Schoemann, 444 So.2d 608 (La.1984).
Report of Commissioner J. Robert Ates, pp. 5-6.
It is well settled that conviction of a felony can constitute the basis of a disbarment, or of a suspension. The discipline to be imposed in a particular case depends upon the seriousness of the offense, fashioned in light of the purpose of lawyer discipline, taking into account aggravating and mitigating circumstances. Louisiana State Bar Ass'n v. O'Halloran, 412 So.2d 523 (La.1982).
*801 Mitigating circumstances are not an excuse or justification for the offense, but may, in fairness and mercy, be considered as extenuating or reducing the degree of moral culpability. Louisiana State Bar Ass'n v. Shaheen, 338 So.2d 1347 (La.1976). We note the jurisprudence contains numerous cases involving disbarment pursuant to convictions of crimes. See, e.g., Louisiana State Bar Ass'n v. Shaheen, supra; Louisiana State Bar Ass'n v. Loridans, 338 So.2d 1338 (La.1976); Louisiana State Bar Ass'n v. Adams, 363 So.2d 418 (La.1978). We note, however, the jurisprudence also contains a number of cases involving felony convictions in which we ordered suspensions under the mitigating facts of the individual cases. See, e.g., Louisiana State Bar Ass'n v. Miller, 382 So.2d 911 (La. 1980); Louisiana State Bar Ass'n v. Levy, 389 So.2d 51 (La.1980); Louisiana State Bar Ass'n v. Drury, 455 So.2d 1387 (La. 1984); and Louisiana State Bar Ass'n v. Miranne, 457 So.2d 642 (La.1984).

OPINION
We deem it appropriate in this case to order the suspension of Arnold J. Rosenthal for three years, effective October 30, 1986, the date of his original suspension. In rejecting disbarment, we take into consideration Mr. Rosenthal's excellent record before the offense, his remorse, and his reputation as a citizen and attorney. Moreover, the evidence produced at the hearing before the commissioner (consisting of three character witnesses and over forty letters) reflects Mr. Rosenthal's good reputation prior to his involvement in the matters reviewed. Before this incident Mr. Rosenthal had an unblemished record as an attorney for over thirty years. The witnesses and letter writers generally agree with the assessment that Mr. Rosenthal is a trusting man who "unwittingly trusted the people he was working with and the other people involved in the matter."
The primary purpose of disciplinary proceedings is to help maintain appropriate standards of professional conduct, to preserve the integrity of the legal profession and to deter other attorneys from engaging in violations of their ethical obligations, not to further punish the attorney. Louisiana State Bar Ass'n v. Paige, supra; Louisiana State Bar Ass'n v. Shoemann, supra. This purpose can be served without disbarment, particularly in view of the mitigating factors in this case. Nevertheless, the seriousness of the offense of which Rosenthal has been convicted mandates strong discipline as a deterrent to other attorneys from engaging in similar violations. Regardless of an attorney's willingness to trust others, he must guard against illegal conduct, and he must not acquiesce once he realizes his trust has been misplaced.

CONCLUSION
For the reasons above, we order that Arnold J. Rosenthal be suspended from the practice of law for three years, effective October 30, 1986.
WATSON, J., concurs and assigns reasons.
DENNIS, J., concurs in the findings of violations but dissents from the sanction imposed.
LEMMON, J., dissents for the reasons assigned by Justice DENNIS.
WATSON, Justice, concurs, noting that he fully agrees that Mr. Rosenthal's reputation, character, and unblemished record, as well as his age, all militate strongly in favor of suspension instead of a more severe sanction.
DENNIS, Justice, dissenting.
I respectfully dissent.
Respondent intentionally engaged in a prolonged course of misconduct for more than six months including multiple fraudulent and deceitful transactions that resulted in damage to the public and individuals.
Disbarment is generally appropriate when a lawyer engages in serious criminal conduct having as one of its necessary elements misrepresentation, fraud, misappropriation, or theft, or an attempt or conspiracy to commit any of these offenses; or when a lawyer engages in any other intentional *802 conduct involving dishonesty, fraud, deceit, or misrepresentation that seriously adversely reflects on the lawyer's fitness to practice. ABA Standards For Imposing Lawyers Sanctions, § 5.1. Furthermore, the aggravating factors of this case include respondent's dishonest or selfish motive, a pattern of misconduct, multiple offenses, refusal to acknowledge the wrongful nature of his conduct, vulnerability of the victims, substantial experience in the practice of law, and indifference to making restitution. Standards, § 9.2. Although respondent had a good reputation and a clean record before these offenses he cannot claim any of the other mitigating factors listed by the Standards. See Standards, § 9.32. Although he demonstrated some remorse at the time he pleaded guilty, he did not express remorse in the hearings held in connection with this disciplinary proceeding. Consequently, after considering the duty violated, the lawyer's mental state, the potential or actual injury caused by the lawyer's misconduct, and the existence of extensive aggravating factors and few mitigating factors, the appropriate sanction is disbarment. Standards, § 3.0.