520 So.2d 400 (1988)
LOUISIANA STATE BAR ASSOCIATION
v.
D. Bert GARRAWAY.
No. 87-B-0460.
Supreme Court of Louisiana.
February 29, 1988.
Thomas O. Collins, Jr., G. Fred Ours, New Orleans, Gerard F. Thomas, Natchitoches, Roland J. Achee, Shreveport, Robert J. Boudreau, Robert M. Contois, New Orleans, Frank J. Gremillion, Baton Rouge, Carrick R. Inabnett, Monroe, Harvey Lewis, New Orleans, Alfred S. Landry, New Iberia, Philippi P. St. Pe', Metairie, for applicant.
D. Bert Garraway, W.P. Macmurdo, Steffes & Macmurdo, Baton Rouge, for respondent.

DISCIPLINARY PROCEEDINGS
COLE, Justice.
In this disciplinary proceeding, we are asked to determine whether the felony conviction *401 of D. Bert Garraway warrants discipline, and if so, the appropriate sanction to be imposed. Garraway was convicted in federal court of conspiracy to extort and three counts of attempted extortion in violation of 18 U.S.C. § 1951 and § 1952.[1] Judge Patrick Carr suspended sentence and placed Garraway on probation for one year, ordering Garraway to perform 300 hours of community service.[2] This obligation was fulfilled through Garraway's work as an attorney in the Baton Rouge Public Defender's Office.
Following the conviction, this disciplinary action was instituted. A hearing was held before the Commissioner who concluded there were sufficient mitigating circumstances to warrant against disbarment. The Commissioner did not make any recommendation as to the appropriate sanction to be imposed. The Committee on Professional Responsibility recommends a suspension of two to three years, while Garraway asks that no sanction be imposed.
When an attorney has been convicted of a crime, the sole issue to be decided by this Court is whether the crime warrants discipline, and if so, the extent thereof. The conviction is conclusive evidence of guilt. La. State Bar Ass'n Articles of Incorporation, Art. 15, § 8(7)(c). The discipline to be imposed in a given case depends on the seriousness of the offense, the circumstances of the offense and the extent of aggravating and mitigating circumstances. Louisiana State Bar Ass'n v. Rosenthal, 515 So.2d 797 (La.1987); Louisiana State Bar Ass'n v. Price, 495 So.2d 1311 (La.1986).
It is implicit in the nature of the crime for which Garraway was convicted that such conduct is serious, thus warranting the imposition of some type of discipline by this court. We shall look to the circumstances underlying the offense, as well as the evidence offered in mitigation or extenuation in order to determine the appropriate discipline.

CIRCUMSTANCES UNDERLYING THE CONVICTION
Our cases stress that the facts and circumstances underlying the conviction are very important in determining the appropriate sanction to be imposed in a given case. Louisiana State Bar Ass'n v. Frank, 472 So.2d 1 (La.1985); Louisiana State Bar Ass'n v. Vesich, 476 So.2d 811 (La.1985). In this case, the circumstances underlying the conviction have been presented to this Court as mitigating factors. While mitigating circumstances are not an excuse or justification for an offense, they may be, in fairness, considered as reducing the degree of moral culpability. Rosenthal, 515 So.2d at 801.
The charges against Garraway arose from his participation in negotiations on behalf of his client, Cleve Reber. Reber operated a land-fill site in Sorrento, Louisiana. A number of chemical companies used the site to dump chemical wastes. In 1974 the state closed the site and filed suit against Reber and unspecified chemical companies. The Environmental Protection Agency intervened, seeking to determine responsibility and to apportion cleanup costs.
Three chemical companies admitted dumping wastes at the site. In 1985, these companies hired private investigators to uncover the names of the other companies that had utilized the site. One investigator sought out Reber for information. Reber agreed to provide information regarding *402 those companies that had used the site in exchange for $250,000.00. Since Reber no longer had records on hand, he would be required to conduct his own investigations. Garraway negotiated the deal on behalf of Reber, initially discussing the matter with the president of one of the chemical companies. The Federal Bureau of Investigation became involved, and soon Garraway was negotiating the deal with undercover federal agents.
Garraway repeatedly asserted to those with whom he was negotiating that he did not want to do anything illegal. At the hearing before the Commissioner, a state district judge and two attorneys testified Garraway consulted them for advice regarding the legality and propriety of the proposed transaction. They all stated they saw nothing wrong or illegal in the proposed course of conduct and advised Garraway accordingly. They also stressed their conversations took place in public, thus negating any secrecy on Garraway's part. From this testimony, the Commissioner concluded Garraway was unaware his conduct was criminal.[3]
We further note that Judge Carr, who presided over the criminal prosecution, expressed his belief that only a "technical" violation of the statute was committed by Garraway. We believe this factor, along with the circumstances outlined above, warrant against the imposition of a harsh sanction.

MITIGATING FACTORS
Garraway has practiced law for over seventeen years, and in that time no disciplinary action has been taken against him. Various members of the legal profession, including judges and practicing attorneys, have attested to Garraway's good reputation in the legal community in terms of competence, honesty and good moral character.
As a condition of probation, Garraway was required to serve the public as an attorney in the public defender's office. Upon fulfilling this requirement, Garraway continued working in the public defender's office as a full time staff attorney. The judges before whom he is currently practicing have praised his performance and honesty before the court. Garraway's seventeen years of experience in criminal law no doubt makes him a valuable asset to the office. This public service, along with Garraway's impeccable record and general good reputation in the community, all counsel against the imposition of a harsh sanction in this case.

CONCLUSION
The crime for which Garraway was convicted comports with the nature of serious conduct thus requiring disciplinary action. We have considered the imposition of only a public reprimand in this case but conclude in light of the conviction, albeit for a "technical" violation, suspension is the appropriate sanction. However, the two to three year suspension recommended by the committee is far too harsh a sanction in view of the mitigating factors present in this case. We also note the lack of sufficiently serious aggravating factors which would justify the imposition of the recommended sanction.[4] Thus, we conclude the *403 appropriate discipline is a three month suspension.

DECREE
For the reasons assigned, we order that D. Bert Garraway be suspended from the practice of law for a period of three months, effective upon the finality of this decree.
CALOGERO, J., dissents in part, would impose a one year suspension from the practice of law.
DENNIS, J., concurs in the finding of disciplinary violations but disagrees with the sanctions imposed for reasons to be assigned.
LEMMON, J., dissents in part and assigns reasons.
DENNIS, Justice, concurring in finding violation but dissenting from the sanction imposed.
There appears to be no Louisiana disciplinary case involving the conviction of an attorney of extortion. However, under our law the conduct in this case also amounts to public bribery under La.R.S. 14:118(4), namely, offering to accept, directly or indirectly, anything of value with the intent to influence a witness upon a trial or other proceeding before a court or other tribunal. Id.
Heretofore this court has imposed the sanction of disbarment upon attorneys convicted of the felony of bribery or conspiracy to commit bribery directly related to their practice of law, despite their professed ignorance of the law, their prior unblemished records, or their arguments of considerable extenuating and mitigating circumstances. E.g., LSBA v. Pitard, 462 So.2d 178 (La.1985); LSBA v. Adams, 363 So.2d 418 (La.1978). The majority opinion fails to explain why this particular attorney should be treated so leniently as to receive only a three month's suspension for the same type felonious conduct and disciplinary violation that usually leads to disbarment.
A three month's suspension is tantamount to nothing more than a reprimand. Before this case a three month's suspension had been used as a sanction only for relatively minor infractions such as negligent failure to promptly deliver settlement proceeds, negligent commingling, inadvertent changing of an illegal attorney's fee, and failure to provide competent and efficient representation. LSBA v. Thalheim, 504 So.2d 822 (La.1987); LSBA v. Causey, 393 So.2d 88 (La.1981); LSBA v. Ruiz, 259 So.2d 895 (La.1972).
LEMMON, Justice, dissenting in part.
The central issue in the criminal proceeding which led to respondent's convictions of conspiracy and attempted extortion was whether respondent was attempting to sell his client's services in researching and reconstructing records of use by other companies of the waste disposal facility or to sell his client's testimony which would be favorable to the purchaser. The federal appellate court, in affirming the conviction, determined that the evidence supported a conclusion that respondent was attempting to extort money in exchange for the client's testimony.[1] Absent mitigating circumstances, the conviction on that basis warrants at least a two or three-year suspension.
*404 Because there were mitigating circumstances, as well as other evidence that did not get before the jury in the criminal case, and because the trial judge at sentencing expressed his belief that respondent was led into a trap and characterized this offense as only "a technical violation of the statute", the appropriate penalty in my opinion should be a one-year suspension. I therefore dissent from the lesser penalty.
NOTES
[1] Garraway was charged with and found guilty of obstructing commerce by conspiring to and attempting to obtain money to which he was not entitled through the wrongful use of fear of economic loss. 18 U.S.C. 1951, provides in pertinent part:

(a) Whoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce by ... extortion or attempts or conspires so to do, ... shall be fined not more than $10,000 or imprisoned not more than twenty years, or both.
(2) The term "extortion" means the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right.
[2] Garraway was convicted in the United States District Court for the Eastern District of Louisiana. The United States Court of Appeals for the Fifth Circuit, in an unpublished opinion, affirmed.
[3] We note the testimony of the judge and attorneys was not offered at Garraway's trial. Garraway did not put on a defense, apparently because he felt it might impact adversely upon his client and co-defendant, Reber, whose trial was not severed. Consequently, the judge and attorneys were never called to testify.
[4] The A.B.A. Standards For Imposing Lawyer Sanction, 9.22, lists the following factors as those which may be considered in aggravation:

(a) prior disciplinary offenses;
(b) dishonest or selfish motive;
(c) a pattern of misconduct;
(d) multiple offenses;
(e) bad faith obstruction of the disciplinary proceeding by intentionally failing to comply with rules or orders of the disciplinary agency;
(f) submission of false evidence, false statements, or other deceptive practices during the disciplinary process;
(g) refusal to acknowledge wrongful nature of conduct;
(h) vulnerability of victim;
(i) substantial experience in the practice of law;
(j) indifference to making restitution.
Only two of the ten factors listed are present in this case. They are Garraway's experience in the law and his refusal to admit to any criminal wrongdoing. He has steadfastly refused to acknowledge his participation in the negotiations as intentional criminal activity.
[1] The appellate court's opinion noted the following evidence favorable to the prosecution: Reber initially cooperated with the state's investigation, but then could not be located; respondent arranged a meeting with the private investigator hired by the three companies and told him "to bring his checkbook"; after Reber indicated to the investigator he had the necessary information for his testimony, respondent told the investigator Reber "wanted to be paid $250,000 for the information" because he was getting up in age and this was his "last chance to make it big"; respondent, although stating that a smaller amount might be "more amicable" and that they did not want to do anything illegal, suggested the payment "could be labeled attorney's fees", on which he would pay taxes to avoid any illegality; Reber stated he would not remember the names of the other companies in his testimony unless he were paid; and the undercover agent who turned over the money to respondent stated he did not consider the payment to be legal.