646 So.2d 326 (1994)
In re Patricia A. KING a/k/a Patricia A. Eicher.
No. 94-B-0686.
Supreme Court of Louisiana.
November 30, 1994.
*327 Orlando N. Hamilton, Jr., Oak Grove, G. Fred Ours, John T. Seale, New Orleans, for applicant.
Patricia A. King, Marilyn M. Fournet, Baton Rouge, for respondent.

DISCIPLINARY PROCEEDINGS
HALL, Justice[*].
Respondent, Patricia Ann King a/k/a Patricia Ann Eicher, was convicted of aiding and abetting mail fraud, 18 U.S.C. 1341 and 1342. At the time of the offense, respondent was an officer, director and in-house counsel for Champion Insurance Company. She was sentenced to six months imprisonment, followed by three years supervised probation, and fined a total of $10,000.00. Respondent's conviction arose from her participation in the highly publicized Champion Insurance scandal. Her actual participation with which she was charged and pled guilty pursuant to a plea bargain consisted of, on one occasion, taping American Bank forms onto paper that could be rolled through Champion's computer printer. The end result was to be an authentic looking bank record containing fraudulent data specifically designed to mislead Champion's auditors and other regulatory officials.
The disciplinary proceedings in this matter are somewhat unusual. After her conviction, this court ordered an interim suspension of respondent, effective November 7, 1991. Formal disciplinary charges were brought against respondent on December 9, 1991. The case was allotted to Hearing Committee # 2 and set for hearing.
Prior to the hearing, respondent and the Office of Disciplinary Counsel entered into an agreement and submitted a joint stipulation whereby respondent would receive a two-year suspension, effective as of the date of her interim suspension. The Hearing Committee rejected the consent discipline, finding the evidence did not support departure from the base-line sanction of disbarment. The Disciplinary Board reviewed the recommendation of the Hearing Committee and upheld its decision to reject the consent discipline of a two-year suspension. By order to the Board Chairman, the matter proceeded by formal charges before a different committee, Hearing Committee # 12.
A hearing was held in the matter at which evidence was presented. Respondent did not personally appear at the hearing but was represented by counsel. Counsel presented a three-page letter from respondent concerning the events leading up to the events which *328 led to her conviction on federal charges. Hearing Committee # 12 recommended a two-year suspension. Upon review, the second Disciplinary Board initially agreed with the Hearing Committee's recommendation, entering written reasons which, however, were not reported to this court. By its own motion, the Board chose to reconsider its initial recommendation. Upon reconsideration, the Board unanimously recommended to this court that respondent be disbarred from the practice of law.
There is only one issue before this court. What is the proper sanction to impose in this case?
Disbarment is suitable when a lawyer violates his duty to the public by serious criminal conduct involving false swearing, misrepresentation or fraud. Louisiana State Bar Ass'n v. Wilkinson, 562 So.2d 902, 909 (La.1990). Suspension can be the proper sanction in some cases. The facts and circumstances underlying the conviction are very important in determining the appropriate sanction to be imposed. Louisiana State Bar Ass'n v. Garraway, 520 So.2d 400 (La. 1988). The discipline to be imposed in a particular case depends upon the seriousness of the offense, fashioned in light of the purpose of lawyer discipline, taking into account aggravating and mitigating circumstances. Louisiana State Bar Ass'n v. Rosenthal, 515 So.2d 797 (La.1987); Louisiana State Bar Ass'n v. O'Halloran, 412 So.2d 523 (La.1982). While mitigating circumstances are not an excuse or justification for an offense, they may be, in fairness, considered as reducing the degree of moral culpability. Rosenthal, 515 So.2d at 801.
The guilty plea and sentencing hearings revealed the following facts. In the years 1988 and 1989, Champion Insurance Company engaged in the selling of automobile insurance to thousands of customers in Louisiana and Alabama. Because of the low prices offered to its customers, Champion experienced unusually rapid growth during those years. The Departments of Insurance for Louisiana and Alabama were responsible for monitoring the growth of Champion and evaluating the financial condition of the company through the receipt of detailed annual financial statements and through on site review of company records at examinations conducted by state officials. The regulatory systems of the two states depended upon the receipt of truthful information from Champion.
Champion was primarily owned by respondent's husband, John Eicher. Naaman Eicher, John's son, was a consultant to the company. He exercised de facto control over the conduct of some of the company's affairs and played a significant role in the events to follow.
In or prior to February 1988, John and Naaman Eicher realized that truthful reporting to state authorities would present a picture of a company experiencing unstable growth with insufficient reserves against potential claims and with insufficient funds to support the continued writing of new insurance policies. John and Naaman decided to conceal a large volume of Champion's business from authorities. The effect of concealment was to make Champion's reserves and surplus figures look adequate when they were not. The Eichers diverted sixty million dollars of Champion's business to an account of United Southern Underwriters, an Eicher controlled corporation which acted as the general agent for Champion in Louisiana. The purpose was to present a false picture of Champion's reserve and surplus ratio, thereby disguising an increasingly unstable financial state.
The scheme involved the submission of bogus numbers to Louisiana and Alabama authorities in the annual or quarterly financial statements Champion was required to provide. It also involved the presentation of bogus documentation to employees of the Louisiana and Alabama Departments of Insurance who were conducting on site examinations of Champion's records. In furtherance of this scheme, the Eichers arranged for the installation of electronic surveillance equipment, including video cameras and microphones, in the conference room in which auditors were required to work. The telephone in the conference room was also tapped.
After Alabama authorities completed their examinations, a report was issued containing *329 unfavorable results. A hearing was scheduled in Alabama to consider sanctions against Champion. In an effort to prepare for these hearings, the company hired an independent Alabama accounting firm. The Eichers intended to provide the accountants with the same bogus information they provided to the state auditors. On their own initiative, the accounting firm decided to conduct fraud oriented testing of Champion which would involve a more detailed scrutiny of the records of United Southern Underwriters. The accountants sought to dispute accusations that Champion was engaged in fraud.
At this point, the Eichers decided that rather than provide genuine bank account statements and risk exposure of fraudulent activities and rather than firing their accountants, counterfeit bank statements would be created. Respondent was then asked by her husband to assist in creating fraudulent bank statements. It was this assistance which led to her felony conviction.
On the weekend commencing May 5, 1989, Naaman and John Eicher recruited various members of their immediate family to physically assist in their scheme. Using printing facilities located on the premises and Champion's computers, the Eichers sought to create counterfeit bank statements. Respondent assisted by taping bogus bank statements onto paper that would roll through Champion's computer printer. This would give the bogus statements the appearance of authenticity.
ABA standards for Imposing Lawyer Sanctions Section 5.11 provides:
Disbarment is generally appropriate when:
(a) a lawyer engages in serious criminal conduct a necessary element of which includes... misrepresentation, fraud,.... or
(b) a lawyer engages in any other intentional conduct involving dishonesty, fraud, deceit or misrepresentation that seriously adversely reflects on the lawyer's fitness to practice.
The comments to this section indicate:
A lawyer who engages in any of the illegal acts listed above has violated one of the most basic professional obligation to the public; the pledge to maintain personal honesty and integrity. This duty to the public is breached regardless of whether a criminal charge has been brought against the lawyer. In fact, this type of misconduct is so closely related to practice and poses such an immediate threat to the public that the lawyer should be suspended from the practice of law immediately pending a final determination of the ultimate discipline to be imposed.
The seriousness of respondent's conduct cannot be understated. She was convicted on two felony counts, arising from a scheme aimed to defraud state insurance officials. As mitigating factors, respondent cites her willingness to assist the government in the conviction of others involved in the Champion insurance scandal by revealing information concerning concealment and destruction of records by Champion management. We agree with the Disciplinary Board which found her cooperation, at least in part, to be motivated by self-preservation, rather than any altruistic cause. The Hearing Committee found mitigating factors of remorse, lack of dishonest or selfish motive, and a timely good faith effort to rectify the consequences of misconduct. The evidence presented by respondent, including her three-page letter, fails to adequately demonstrate any of these mitigating factors. Her argument concerning her "willful blindness" to the scheme is unconvincing. We must take notice of the fact respondent was married to the primary owner of Champion, John Eicher. She was employed as in-house counsel for Champion from September of 1985 to June of 1989 and was a director and officer of the corporation. The mitigating evidence presented does not warrant a deviation from the baseline discipline of disbarment.
Respondent contends her discipline should be determined by the sanctions imposed in In re O'Neil, 612 So.2d 738 (La.1993) (thirty month suspension following a conviction for one count of mail fraud and one count of executing a scheme to defraud a federally funded bank arising from the Champion Insurance scandal). In O'Neil, this court specifically noted the respondent might not have been prosecuted had he not submitted himself *330 and his information to the government. Respondent's cooperation began only after she obtained independent counsel and distanced herself from the rest of the Eicher family.
She also relies on the sanctions imposed in Louisiana State Bar Ass'n v. Rosenthal, supra (three year suspension following a conviction for two counts of wire fraud) and Louisiana State Bar Ass'n v. Wilkinson, supra (thirty month suspension following a conviction for aiding and abetting wire fraud). Respondent's reliance on these cases is misplaced. In both these decisions, the court cited the attorneys' exemplary character, reputation and remorse, which was fully supported by the record. In those opinions, the court found the mitigating factors disclosed by the record greatly outweighed the aggravating factors. The same cannot be said for respondent.

DECREE
Accordingly, it is ordered that Patricia Ann King be and she is hereby disbarred from the practice of law, effective from the date of her interim suspension by this court on November 7, 1991. All costs of this proceeding are assessed to respondent.
DISBARMENT ORDERED.
LEMMON, J., joins in the opinion and assigns additional reasons.
LEMMON, Justice, assigning additional concurring reasons.
Respondent was an attorney and officer for Champion Insurance Company. In furtherance of Champion's fraudulent scheme to conceal from insurance regulators the true financial condition of the company, respondent taped bank forms onto paper that could be rolled through Champion's computer printer, thereby producing the appearance of authentic bank statements which contained false financial information. Champion used the United States mail in connection with this scheme to deceive government regulators and policyholders. As a result, respondent was convicted of aiding and abetting mail fraud.
The record does not suggest that respondent refused to accept, or objected to the Eicher's family's receiving, the financial benefits of the fraudulent scheme; to the contrary, the record shows that respondent knew that Champion was intentionally deceiving the insurance regulators and in fact participated to some extent in the deception. Only after the scheme was uncovered did she cooperate in the liquidation proceeding, where to her great credit she furnished valuable information. Nevertheless, that credit is so greatly outweighed by the magnitude of the insurance fraud and the severity of the injuries to the policyholders and the public that disbarment remains the appropriate penalty for her misconduct. Credit for the significant mitigating circumstance may be considered upon her application for readmission when she becomes eligible to apply.
NOTES
[*] Judge William Norris, III, Court of Appeal, Second Circuit, sitting by assignment in place of Justice James L. Dennis; Judge Felicia Toney Williams, Court of Appeal, Second Circuit, participating as Associate Justice Pro Tempore, effective September 1, 1994, not on panel. Rule IV, Part 2, § 3.