*167 ATTORNEY DISCIPLINARY PROCEEDINGS
PER CURIAM.*
This matter arises from one count of formal charges filed by the Office of Disciplinary Counsel (“ODC”) against respondent, H. Gayle Marshall, an attorney licensed to practice law in Louisiana but who is currently on interim suspension.[1]
UNDERLYING FACTS
In March 1990, William H. Edmonds formed a corporation known as Alexandria Mobile Home Sales, Inc. (“AMH”). Although AMH’s business principally involved the purchase and sale of mobile homes, the company would, from time to time, submit bids for government contracts to provide mobile homes in areas affected by natural disasters. In September 1994, Edmonds and Doyle Luneau, Edmonds’ business partner and a co-manager of AMH, submitted a bid on behalf of AMH to the United States Army Corp of Engineers. The bid was in response to an invitation for bids to construct a mobile home park in Albany, Georgia for families displaced by severe flooding in that area. AMH’s bid was ultimately successful, and the contract awarded to the company by the Army Corp of Engineers was valued at more than $925,000. However, during the course of the contract, Edmonds and Lu-neau converted to their own use more than $785,000 in progress payments that should have been paid to AMH’s subcontractors and suppliers.
On November 7, 1994, Edmonds and Luneau met with respondent at his office in Lake Charles.[2] The men told respondent about AMH’s Army Corp of Engineers contract and that | athey had used the progress payments the company had already received for their own benefit. Ed-monds and Luneau sought respondent’s advice as to how to best shield themselves and their property from the claims of legitimate creditors. Respondent told Ed-monds and Luneau that the matter could be taken care of for a fee.
On November 8, 1994, respondent again met with Edmonds and Luneau. Respondent advised the men that he would prepare fictitious corporate minutes and resolutions and other documents reflecting non-existent loans by, and corporate obligations of, AMH in favor of Edmonds and Luneau. Respondent intended that these documents would conceal Edmonds’ and Luneau’s actions in keeping the payments made to AMH undér the Army Corp of Engineers contract. At this meeting, Ed-monds and Luneau paid respondent a fee of $22,500 to prepare the documents.
In a third meeting which took place on November 17, 1994, respondent presented Edmonds and Luneau with false and fictitious corporate minutes, resolutions, and other documents he had prepared, some of which were backdated to 1990. Edmonds and Luneau signed the fabricated documents at respondent’s direction.
Later, when Edmonds was scheduled to be deposed in connection with a civil suit brought against AMH, respondent gave copies of the fabricated corporate documents to Edmonds and told him to study them and to testify consistently with them during the deposition. Respondent was present at the February 1995 deposition, acting as the attorney for AMH and Ed-monds. When Luneau was deposed in April 1995 in connection with the same suit, respondent told Luneau to testify falsely under oath that he had made no *168 decisions concerning the operation of AMH and that he had simply loaned money to the company and was attempting to get it back. Respondent was also present at Luneau’s deposition.
In June 1995, respondent delivered the falsified and backdated documents to a Special Agent in response to a federal grand jury subpoena, despite his knowledge that the records were material to the grand jury’s investigation of the matter involving AMH’s Army Corps of Engineers contract. Moreover, respondent provided untruthful testimony when he personally appeared before the grand jury.[3]
|sOn July 11, 1997, the United States Grand Jury sitting in the Southern District of Georgia, Savannah Division, returned a four count indictment against respondent. On October 10, 1997, respondent pleaded guilty to counts two (obstruction of justice) and three (making false declarations before a grand jury) of the indictment. Respondent was subsequently fined and sentenced to a term of imprisonment of thirteen months as to each count, to be served concurrently, to be followed by a two-year period of supervised release and 500 hours of community service.

Formal Charges

On October 10, 1997, following his guilty plea in the United States District Court, Southern District of Georgia, Savannah Division, respondent was ’ convicted of one count of obstruction of the due administration of justice, a violation of 18 U.S.C. § 1503, and one count of false declarations before a grand jury, a violation of 18 U.S.C. § 1623. The ODC alleges that respondent’s conduct violates Rules 3.3(a)(2) (concealing or knowingly failing to disclose that which the lawyer is required by law to reveal), 3.3(a)(4) (offering evidence the lawyer knows to be false), 3.4(a) (unlawfully altering, destroying, or concealing evidence), 3.4(b) (falsifying evidence and counseling or assisting a witness to testify falsely), 8.4(a) (violation of the Rules of Professional Conduct), 8.4(b) (commission of a criminal act reflecting adversely on the lawyer’s honesty, trustworthiness, or fitness as a lawyer), 8 .4(c) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation), and 8.4(d) (engaging in conduct prejudicial to the administration of justice) of the Rules of Professional Conduct, and Supreme Court Rule XIX, § 19(B) (conviction of a “serious crime” reflecting upon the attorney’s moral fitness to practice law).
DISCIPLINARY PROCEEDINGS
After the ODC instituted formal charges, respondent, through counsel, filed an answer admitting the factual allegations of the formal charges and seeking the imposition of appropriate ^sanctions. When the matter was presented for formal hearing before a hearing committee, the sole issue to be determined was the appropriate sanction for respondent’s misconduct.

Hearing Committee Recommendation

After reviewing the indictment, respondent’s guilty plea, and the transcript of the sentencing hearing, the committee concluded that respondent violated the professional rules as charged. With respect to the imposition of discipline for respondent’s misconduct, the committee found the baseline sanction is disbarment, con *169 sidering that respondent’s crime involved the intentional interference with the administration of justice, false swearing, misrepresentation, fraud, and the attempt to assist others in the misappropriation of property. The committee found three mitigating factors, namely the absence of a prior disciplinary record, good character and reputation, and remorse, and three aggravating factors, including dishonest or selfish motive, substantial experience in the practice of law (admitted 1972), and illegal conduct. After consideration of the ABA’s Standards for Imposing Lawyer Sanctions and prior jurisprudence,[4] the committee concluded there was no reason to deviate from the baseline sanction:
In the situation before this committee it is undisputed that false evidence was prepared by the Respondent with the •intent to deceive. It is equally clear that the actions of the Respondent resulted in a significantly adverse impact on the orderly administration of justice.
Accordingly, the hearing committee recommended that respondent be disbarred from the practice of law.

Disciplinary Board Recommendation

The board agreed with the hearing committee that respondent violated duties owed to the legal system, the profession, and the public. The board found that by making false and misleading declarations to a tribunal and by obstructing justice, respondent engaged in knowing and intentional misconduct. The board also noted that there is sufficient authority to support disbarment 1 for respondent’s criminal conviction, citing In re: Sentenn, 98-3019 (La.1/29/99), 730 So.2d 868; In re: Basile, 98-0900 (La.5/29/98), 714 So.2d 687; In re: Harrington, 98-0344 (La.5/8/98), 710 So.2d 243; and In re: Schneider, 97-2457 (La.1/30/98), 707 So.2d 38.
Accordingly, the board recommended that respondent be disbarred from the practice of law. The board further recommended that respondent be assessed with all costs and expenses of these proceedings, with legal interest to commence running thirty days from the date of finality of the court’s judgment until paid.
Neither respondent nor the ODC objected to the board’s recommendation.
DISCUSSION
Based on our review of the record, we find that the ODC proved by clear and convincing evidence that respondent knowingly and intentionally participated in criminal conduct that involved misrepresentation and fraud. His actions demonstrate he lacks the fitness to practice law.
Accordingly, we will accept the disciplinary board’s recommendation and disbar respondent from the practice of law in Louisiana.
DECREE
Upon review of the findings and recommendation of the disciplinary board, and considering the record, it is ordered that the name of H. Gayle Marshall be stricken from the roll of attorneys and that his license to practice law in the State of Louisiana be revoked, retroactive to the date of his interim suspension. All costs and expenses in the matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty days from the date of finality of this court’s judgment until paid.
KNOLL, J., not on panel.

 Knoll, J., not on panel. Rule IV, Part II, § 3.

. On January 30, 1998, this court granted a joint motion for interim suspension filed by respondent and the ODC, following respondent’s conviction of a "serious crime" for purposes of Supreme Court Rule XIX, § 19. In re: Marshall, 97-3167 (La.1/30/98), 709 So.2d 691.

. Edmonds and Luneau were referred to respondent by an Alexandria attorney for whom respondent had earlier handled a personal bankruptcy matter.

. Respondent told Edmonds and Luneau that if he were asked, he would testify that he began representing AMH in 1990, rather than in 1994. However, before the grand jury, respondent denied having made such a statement to the two men.
Respondent later admitted that he "knowingly lied to the grand jury when I denied having told Luneau and Edmonds that I would testify that I had started representing Alexandria Mobile Homes, Inc. in 1990.... I didn't want the grand jury to [kjnow that I had told Luneau and Edmonds that I would lie if subpoenaed. I was afraid of making such an admission because I knew that it would make me look bad.”

. In In re: Patricia A. King a/k/a Patricia A. Eicher, 94-0686 (La. 11/30/94), 646 So.2d 326, respondent's conviction for aiding and abetting mail fraud arose out of her participation in the highly publicized Champion Insurance Company scandal. In furtherance of Champion's scheme to conceal from insurance regulators the true financial condition of, the company, respondent created counterfeit bank records containing financial information she knew to be false. Noting that respondent’s criminal conduct involved both misrepresentation and fraud, this court ordered that she be disbarred.