MARCUS, Justice.
The Louisiana State Bar Association, through its Committee on Professional Responsibility, instituted this disciplinary proceeding against Alfred B. Shapiro, a member of said association. The Committee’s petition for disciplinary action is based upon respondent’s final convictions resulting from a plea of guilty to two counts of distribution of cocaine in violation of 21 U.S.C. § 841(a)(1).
On September 17, 1980, Alfred B. Shapiro was indicted in the United States District Court for the Western District of Louisiana on one count of conspiracy to distribute and to possess knowingly with the intent to distribute cocaine and on nine separate counts of distribution of cocaine, all in violation of 21 U.S.C. § 841(a)(1). On February 13,1981, a plea of guilty was entered to counts five and eight of the indictment which charged respondent with distribution of cocaine in March and November of 1979. Pursuant to a memorandum of understanding among the parties, the remaining counts of the indictment were dismissed. Following convictions resulting from his plea of guilty to counts five and eight, respondent was sentenced on each count to imprisonment for a period of six years with a five-year special parole term to follow.[1] The trial judge expressly directed the sentences be served concurrently and ordered execution suspended until respondent’s release from state custody.[2]
After respondent’s convictions had become final, the Committee on Professional Responsibility filed a petition in this court on January 5, 1982 seeking an order suspending respondent from the practice of *1383 law and authorizing the Committee to institute the necessary disciplinary proceedings. This petition followed a determination by the Committee that the crimes of which respondent had been convicted were final and constituted “serious crimes” reflecting upon his moral fitness to practice law. On April 1, 1982, this court granted the requested order. 412 So.2d 990.
Subsequently, on February 18, 1988, the Committee filed a petition in this court seeking disciplinary action against respondent under the provisions of Article 15, section 8, paragraph (7)(a) through (d) of the Articles of Incorporation of the Louisiana State Bar Association.[3] Respondent filed an answer denying that he was morally unfit to practice law. After issue was joined by respondent’s answer, a Commissioner was appointed by this court. A hearing was conducted on October 31, 1983, at which respondent was afforded full and unrestricted opportunity to. present any and all evidence of “mitigating circumstances not inconsistent with the essential elements of the crime for which he was convicted....” In the formal report of the Commissioner to this court, it is stated that the Commissioner found the offenses for which respondent was convicted to be felonies under federal law involving moral turpitude and constituting “serious crimes” warranting disciplinary action, the only question being as to the extent of such discipline. The Commissioner recommended disbarment. The Committee on Professional Responsibility filed its concurrence to the report of the Commissioner.
An opposition to the report of the Commissioner was filed by respondent. The matter was then submitted to this court under our original jurisdiction.[4]
The sole issue to be determined by this court in a disciplinary proceeding based on a conviction of a crime is whether “the crime warrants discipline, and if so, the extent thereof.” Article 15, section 8, paragraph (7)(d) of the Articles of Incorporation of the Louisiana State Bar Association; Louisiana State Bar Association v. Marcal, 430 So.2d 47 (La.1983).
At the hearing before the Commissioner, respondent introduced evidence of mitigating circumstances.
Respondent is now forty-one years old. He is married and has two teenage children. Although he has been separated from his wife since September of 1979, there has been no judicial separation or divorce. Respondent received a bachelor of arts degree and a law degree from Louisiana State University. He was admitted to practice in Louisiana in 1968. After graduation from law school, respondent joined the National Guard and went on active duty with the Army for a short time. In early 1969, he returned to his hometown of Alexandria where he went into private practice with his father and uncle. After about one year, respondent took a position as a law clerk for a federal district court judge, where he served for about eighteen months. He left this position in 1972 to become an assistant district attorney. Af *1384 ter four years with the district attorney’s office, where he attained the position of chief prosecutor, respondent returned to private practice in 1976 to join a law firm in Alexandria. Respondent left the firm after two years to open his own law office. In 1978, he ran unsuccessfully for a district judgeship. Respondent has served in an appointed capacity as a temporary judge ad hoc on the city court.
From 1975 to 1978, respondent served without pay as an instructor at the Alexandria Police Academy. During this same time period, he also taught criminal law at Louisiana College. He has served as a member of the indigent defender board and as a member of the executive committee of the local bar association.
In 1978, respondent became involved with Ms. Lavona Ryland. She died in respondent’s apartment in November of 1979 of a gunshot wound. Respondent was charged and eventually convicted of the second degree murder of Ms. Ryland. On appeal to this court, the conviction and life sentence were reversed on rehearing on the ground there was insufficient evidence to support the conviction. State v. Shapiro, 431 So.2d 372 (La.1983) (on rehearing). Respondent has consistently maintained that Ms. Ryland either committed suicide or accidentally shot herself.
In 1977, when respondent’s marriage and his wife’s mental health began deteriorating, he started using drugs. He testified that he used drugs very rarely in 1977 and early 1978. However, from 1978 to the spring of 1980, his drug use increased. He was hospitalized for one day on November 24, 1979 for an overdose of a mixture of drugs. In the spring of 1980, his personal life deteriorated so badly that he began taking large quantities of valium. Respondent spent seventeen days in the hospital in a substance abuse program. He also attended and successfully completed a drug abuse program while he was in the Federal Correctional Institution in Oxford, Wisconsin. Participation in a “drug aftercare program” was made a condition of his parole. At the time of the hearing before the Commissioner, respondent was attending weekly group sessions at the Baton Rouge Substance Abuse Clinic.
Respondent testified as to the incidents that led to his federal convictions for distribution of cocaine. He stated that he used cocaine socially and that its use was a “fad” in his circle of friends. His friends occasionally asked him to obtain cocaine for them. Similarly, when his friends had access to cocaine, they would reciprocate. In the two incidents that led to his convictions, two friends, who were also attorneys, asked respondent to obtain cocaine for them. He complied and sold to each one quarter of an ounce of cocaine. Respondent testified that the sales were made as a favor to his attorney friends and that there was not a profit motive in either sale.
After respondent’s arrest in August of 1980, he voluntarily terminated his law practice. Respondent contacted his clients, made arrangements to return their files and helped them find another attorney. He has done no legal work since then, except paralegal-type work for two Baton Rouge attorneys. Respondent feels remorseful about his conduct and is sorry for the problems it has caused for his parents and children. Also, he is aware of the bad reflection his conduct has had on the legal profession and plans to make amends by conducting himself in a dignified manner.
The Committee produced no countervailing evidence on the issue of mitigation.
We agree with the finding of the Commissioner, concurred in by the Committee, that respondent has been convicted of serious crimes which reflect adversely upon his moral fitness to practice law. Hence, disciplinary action is warranted. We further agree with the recommendation of the Commissioner, concurred in by the Committee, that respondent should be disbarred. Considering the nature of the offenses for which respondent was convicted, his past positions of public visibility and responsibility, his current status of being under parole supervision, and the attendant publicity of this matter, we believe the Commissioner’s recommendation of disbar *1385 ment is appropriate. Such action is required to protect the public, the administration of justice and the integrity of the legal system. Moreover, disbarment is justified because, upon an application for readmission, respondent has the burden to prove his good moral character, including his freedom from drug use. This is an important consideration because of respondent’s admitted drug problem. However, due to the substantial mitigating circumstances, respondent’s disbarment is made retroactive to the date of our suspension order of April 1, 1982.
DECREE
For the reasons assigned, it is ordered, adjudged and decreed that the name of Alfred B. Shapiro be stricken from the Roll of Attorneys and his license to practice law in the State of Louisiana be hereby revoked effective April 1, 1982, the date of this court’s order suspending him from the practice of law.

. Respondent served two years of his sentence in the Federal Correctional Institution in Oxford, Wisconsin, a maximum security prison. He was released on parole on July 12, 1983.

. For a description of the state proceedings against respondent, see State v. Shapiro, 431 So.2d 372 (La.1983) (on rehearing).

. Article 15, section 8, paragraph (7)(a) through (d) of the Articles of Incorporation of the Louisiana State Bar Association provide:
(7) After the conviction has become final, that is, all appeals have been concluded or exhausted, the procedure shall be as follows:
(a) The Committee will file a petition in the Supreme Court seeking disbarment or any other remedy that the Committee deems appropriate, and the petition will be served upon the respondent in the same manner as in ordinary proceedings.
(b) When issue is joined by answer by the respondent, a Commissioner will be appointed by the Supreme Court to represent the Court in the same manner as in ordinary proceedings.
(c) At the hearing before the Commissioner, the certificate of the conviction of the respondent shall be conclusive evidence of his guilt of the crime for which he has been convicted.
(d) At the hearing based upon a respondent’s conviction of a crime, the sole issue to be determined shall be whether the crime warrants discipline, and if so, the extent thereof. At the hearing the respondent may offer evidence only of mitigating circumstances not inconsistent with the essential elements of the crime for which he was convicted as determined'by the statute defining the crime.

. La. Const, art. 5, § 5(B) (1974).