## 22822

In the Matter of Newton Ingram HOWLE, Jr.

(363 S. E. (2d) 693)

Supreme Court

*Atty. Gen. T. Travis Medlock, Asst. Attys. Gen. B. J. Willoughby* and *Pope Brooks Shealy, Jr.,* Columbia, *for complainant.*

*Benny R. Greer,* of *Greer and Milling,* Darlington, *for respondent.*

Heard Nov. 16, 1987.

Decided Jan. 11, 1988.

*Per curiam:*

Respondent was charged with numerous acts of professional misconduct arising from his mishandling of client funds. Respondent concedes his conduct was unethical. He defends his actions, however, on the grounds that the misconduct stemmed from a manic depressive episode he suffered. The Hearing Panel (Panel) and Executive Committee both recommended respondent be indefinitely suspended from the practice of law. We concur in the findings of ethical violations, but impose a two year suspension retroactive to the date respondent voluntarily ceased practicing law.

## FACTS

Respondent stipulated to the occurrence of the following four incidents:

(A) *The Alma Stonecypher Matter:*

Respondent received $17,500.00 on behalf of client Alma Stonecypher. These monies were deposited into the trust account of respondent's law firm on February 19, 1985. That same day, respondent disbursed the total $17,500.00: $12,554.92 to Mrs. Stonecypher and $4,945.08 to his law firm. In July, 1985, respondent disbursed $2,416.66 from the law firm trust account to another attorney as a fee in the Stonecypher matter. There had been no deposit of additional funds to cover this disbursement. A $2,416.66 shortage in the law firm's trust account resulted. Respondent has reimbursed his law firm's trust account for the payment made to the other attorney.

(B) *Lynn Kelly Matter:*

Respondent received $15,000.00 on behalf of client Lynn Kelly. These monies were deposited into the trust account of respondent's law firm on June 13, 1985. On or about the same day respondent disbursed, by check on the trust account, the sum of $5,000.00 to Lynn Kelly and $5,000.00 to his law firm. About one week later respondent disbursed $1,208.00 to himself. The next week respondent disbursed $500.00 to his law firm's attorney account. Respondent did not prepare a settlement statement, nor was there any authorization for the last two disbursements. Subsequent to the investigation into this matter, respondent's law firm paid the sum of $4,042.00 to Lynn Kelly as the balance due on this receipt by respondent. Respondent later fully reimbursed his law firm.

(C) *Grant v. Grant Matter:*

In early March, 1985, respondent received $2,690.00 on behalf of Kay Grant as a collection of child support arrearages owed to Mrs. Grant by her former husband. On or about March 7, 1985, respondent paid Kay Grant $2,690.00 by check drawn on his law firm's trust account when no corresponding deposit had been made. This resulted in a $2,690.00 shortage of funds. On or about March 8, 1985, respondent deposited the $2,690.00 arrearages payment to his personal account. Respondent later repaid the money.

(D) *The Hankins Matter:*

In June, 1985, respondent caused Bonita Hankins, the guardian of a minor, to pay him a $3,000.00 fee. Respondent

neither provided services before the payment nor spent time afterwards to justify that fee. Respondent refunded the $3,000.00 prior to service of the complaint against him.

Respondent's law partner noted irregularities in the firm's trust account and ordered an audit, which confirmed the above-noted misconduct. On September 9, 1985, respondent voluntarily ceased practicing law. The next day, he was admitted to McLeod Regional Medical Center under the care of Dr. Davis, a psychiatrist.

Pursuant to this Court's order dated October 8, 1986, respondent was further examined by Dr. Sabalis, a clinical psychologist, and Dr. Harding, a psychiatrist.

## DISCUSSION

We agree with the findings of the Panel and the Committee that respondent's conduct violated Supreme Court Rule 32 as follows: DR 1-102(A)(4) (conduct involving dishonesty, fraud, deceit); DR 1-102(A)(6) (conduct adversely reflecting on fitness to practice law); DR 2-106(A) (charging and collecting an excessive fee); DR 9-102(B)(3) (failure to maintain complete records of all funds coming into possession and failure to render appropriate accounts to client); and DR 9-102(A) (misappropriation of client funds). Our review of the testimony and medical evidence in the record, however, convinces us that a retroactive two year suspension is the appropriate sanction.

During the months in question, respondent labored under a mental illness over which he had little or no control. Respondent and his law partner both testified, and affidavits by local attorneys confirmed, that respondent's unethical actions were isolated, uncharacteristic events in an otherwise unblemished legal career. The Panel noted that this was the first grievance brought against respondent, that no client was prejudiced, and that respondent reimbursed his law firm for all funds he mishandled. We are convinced, as is respondent's psychiatrist, that respondent's actions stemmed from extremely poor judgment brought on by a manic depressive depressed episode. The record reflects that respondent's poor judgment was the outgrowth of severe depression rather than some innate corruption.

In the most recent medical evidence submitted in the record, respondent's psychiatrist reported on February 19,

1987 that respondent had been recovering from his manic depressive depressed episode through treatment with an antidepressant drug. Dr. Davis fully endorsed respondent's rehabilitation and a return to law practice within 60-90 days of that date. Respondent, unlike the attorney disicplined in *In the Matter of Howey*, 267 S. C. 430, 229 S. E. (2d) 264 (1976), has overcome his manic depressive illness to such a point that he is able to exercise the discretion and judgment necessary for the practice of law.

We are aware that the psychological evaluations of Doctors Sabalis and Harding attribute respondent's misconduct to long term character flaws rather than a manic depressive depressed episode. We believe that the reports of respondent's treating psychiatrist, Dr. Davis, who examined and treated respondent over a sixteen month period, are entitled to greater weight than the evaluations drawn from the single psychiatric sessions.

In sum, we believe respondent's misconduct can be traced directly to a manic depressive depressed episode for which he has now been successfully treated. Having the ultimate authority to determine the appropriate disciplinary sanction, *Burns v. Clayton*, 237 S. C. 316, 117 S. E. (2d) 300 (1960), this Court orders respondent temporarily suspended from the practice of law for a two year period retroactive to September 9, 1985.

Respondent will be reinstated to the office of attorney upon his successful completion of the Bridge the Gap program under Rule 5A(8) and receipt of a favorable recommendation from the Committee on Character and Fitness. As a further condition to reinstatement and continued good standing with this Court, respondent must annually submit to the Clerk of this Court a medical statement certifying that he has experienced no recurrence of manic depressive depressed episode.

Temporary suspension.

CHANDLER, J., not participating.