DISCIPLINARY PROCEEDINGS
MARCUS, Justice.
The Louisiana State Bar Association, through its Committee on Professional Responsibility, instituted this disciplinary proceeding against John M. Standridge, a member of said association. The committee’s petition for disciplinary action is based on respondent’s final conviction of the crime of theft.
On December 9, 1983, John M. Stand-ridge was charged by bill of information in the Fifteenth Judicial District Court, Parish of Lafayette, with theft of cash in excess of $500 belonging to Douglas MacDiarmid in violation of La.R.S. 14:67. As part of his representation of MacDiarmid, respondent was entrusted in February of 1983 with $76,000 to invest on behalf of his client. Between February and June of 1983, respondent never invested the money and it *1257 was never accounted for. Respondent pled not guilty and not guilty by reason of insanity to the charge. After a bench trial in November of 1985, respondent was found sane at the time of the offense, guilty as charged and sentenced to serve two years with the Department of Corrections. The sentence was suspended conditioned upon respondent’s making restitution in the amount of $50,000 within one week of the date of sentencing, October 7, 1986. Respondent made restitution by obtaining a loan from his parents. His conviction and sentence were affirmed on appeal and writs were denied by this court.[1]
Concurrent with the theft offense in Lafayette, on May 9, 1983, respondent was charged by bill of information in Orleans Parish with two counts of forgery in violation of La.R.S. 14:72.[2] He entered a plea of not guilty and not guilty by reason of insanity to these charges. On January 27, 1984, Judge Jerome Winsberg, finding that respondent lacked mental capacity to proceed, committed him to Feliciana Forensic Facility where he remained until May 1984. In June of 1984, after a hearing, respondent was found competent to stand trial on the forgery charges. After a bench trial, respondent was found not guilty by reason of insanity at the time of the offenses. Finding respondent not presently a danger to himself or to others, he was placed on active probation for an indefinite term under special conditions.
Pursuant to Section 9(b) of Article 15 of the Articles of Incorporation of the Louisiana State Bar Association, respondent was suspended from the practice of law on ground of medical incapacity and disability on January 4, 1985.[3] 461 So.2d 300. Upon finality of the Lafayette conviction (June 1987) and based upon its determination that the crime of which respondent had been convicted constituted a “serious crime” reflecting upon his moral fitness to practice law, the Committee on Professional Responsibility filed a petition in this court on August 19, 1987, seeking an order suspending respondent from the practice of law and ordering the committee to institute the necessary disciplinary proceedings.[4] On October 29, 1987, this court granted the requested order.[5] 514 So.2d 19.
Subsequently on November 4, 1987, the committee filed a petition in this court seeking disciplinary action against respon *1258 dent under the provisions of Article 15, section 8(a), paragraph (7)(a) through (d) of the Articles of Incorporation of the Louisiana State Bar Association.[6]
Respondent filed an answer denying that he lacked the moral fitness to practice law and affirmatively pleading that the actions complained of in the petition were done when respondent was suffering from a mental illness which impaired his judgment and actions. After issue was joined by respondent’s answer, a commissioner was appointed by this court. Hearings were conducted on February 8 and March 4, 1988, at which respondent was afforded full and unrestricted opportunity to present any and all evidence of “mitigating circumstances not inconsistent with the essential elements of the crime for which he was convicted....” In the formal report of the commissioner to this court, it is stated that the commissioner found the offense (theft) for which respondent was convicted to be a felony involving moral turpitude and constituting a serious crime warranting disciplinary action, the only question being the extent of such discipline. The commissioner recommended disbarment. The Commit tee on Professional Responsibility concurred in the commissioner’s findings of fact and conclusions of law and recommendation as to discipline. Respondent concurred in most of the findings of fact but opposed the conclusions of law and the recommendation as to the proposed disciplinary action. The matter was then submitted to this court under our original jurisdiction.[7]
The sole issue to be determined by this court in a disciplinary proceeding based on a conviction of a crime is whether “the crime warrants discipline, and if so, the extent thereof.” Article 15, section 8(a), paragraph (7)(d) of the Articles of Incorporation of the Louisiana State Bar Association; Louisiana State Bar Association v. Shapiro, 455 So.2d 1382 (La.1984).
At the hearings before the commissioner, respondent introduced evidence of mitigating circumstances.
Respondent is thirty-nine years old. He received his law degree from Loyola University in 1977. After he was admitted to practice law in Louisiana, he went into private practice. In 1980, respondent became the supervising attorney at Loyola Law School Clinic while continuing his private practice. His duties at the clinic were to supervise senior law students in the trial of civil and criminal cases.
According to Jack Nelson, his supervisor at the law school, respondent’s work during the first fourteen months with the law clinic was excellent. During late 1981 or early 1982, he began to experience job difficulties due to the demands of his private practice and was asked to resign from the position in July 1982. Respondent resumed his private practice with greater zeal than ever, taking on clients all over the state of Louisiana, as well as Arkansas and Mississippi. During early 1983, respondent undertook representation of MacDiarmid in Lafayette and shortly thereafter the theft and forgery offenses occurred. An attorney who shared office space with respondent during 1982 through 1983 testified *1259 that although it appeared that respondent was conducting a very successful law practice, his state of affairs both personally and professionally were in a state of disarray. The attorney testified that respondent was not taking fees on some cases and in other instances giving clients more than the case was settled for. In May 1983, after respondent made an attempt on his life, he voluntarily committed himself to DePaul Hospital in New Orleans. Following his release, he was first diagnosed as having manic depressive disease by Dr. Kenneth Ritter. In early 1984, following a determination by Judge Winsberg that respondent lacked mental capacity to stand trial on the forgery charges, he was remanded to East Feliciana Forensic Facility where he underwent treatment from February to May 1984 under Dr. Aris Cox. He was placed on 3000 mg. daily of lithium carbonate to control his illness. Following his release and after trial for the forgery charges, respondent was placed on probation and began working for Judge Dennis Waldron at Orleans Parish Criminal District Court as a part-time clerk and eventually accepted a full-time clerkship with Judge Wins-berg and part-time duties with Judges Wal-dron and Cannizaro. He was tried and convicted of theft in the Lafayette proceeding (the conviction upon which this disciplinary action is based) in November of 1985. On January 17, 1987, respondent married Marie Lobue, an associate professor of economics at the University of New Orleans. In March 1988, finding that respondent’s mental prognosis was excellent and his illness was in remission, his probation was terminated.
Respondent has never denied the commission of the acts resulting in the conviction of theft. By way of defense to both the theft charge and the forgery charges (all occurring within a few months), he pled not guilty by reason of insanity. One judge found respondent not guilty by reason of insanity at the time of the offenses (forgery); another judge found respondent sane at the time of the offense and guilty of the charge (theft). In mitigation of the present discipline to be imposed, respondent contends that the actions upon which his conviction is based were done when he was suffering from a mental illness which impaired his judgment.
Dr. Kenneth Ritter, a psychiatrist who saw respondent in June 1983, and Dr. Aris Cox, a psychiatrist who treated respondent at Feliciana Forensic Facility in early 1984, both diagnosed respondent as having manic depressive or bipolar affective illness. They explained that the illness, a chemically determined metabolic disease, is characterized by mood swings, hyperactivity, poor judgment and severe depression. People with manic depressive disease will have periods of high elation, euphoria and grandiosity followed by very deep dismal depression, and the person will often exhibit suicidal tendencies. Dr. Cox treated respondent with lithium carbonate which prevents the mood swings. After leaving Feli-ciana, respondent began attending an outpatient clinic in New Orleans. Dr. Cox continues' to prescribe lithium (3000 mg. daily) for respondent and monitors his serum lithium levels about every six weeks. Both doctors agree that respondent can remain on his medication for an indefinite period of time. They see respondent at the court quite often and they testified that respondent functions well in his current positions and that his illness is presently in remission. Both doctors testified at the theft trial and opined that at the time of the offense, respondent could not distinguish between right and wrong. The testimony of both Dr. Cox and Dr. Ritter that respondent was not responsible for his actions formed the basis of respondent’s defense to the forgery charges.
Judge Jerome Winsberg, who presently employs respondent as a full-time law clerk, testified that his work is highly commendable, his mental condition is stable, and that overall he does a “remarkable job.” Judge Waldron also testified very favorably regarding respondent’s legal duties. Numerous attorneys with whom respondent has worked submitted letters praising his moral and ethical character as well as his legal capabilities. Respondent’s parents supported him emotionally and financially during his illness and the subsequent disciplinary proceeding. His wife described her relationship with respondent as very close and mutually supportive. She *1260 testified that since their marriage, respondent has exhibited no signs of his manic depressive illness.
Respondent testified that he has very little independent recollection of the manic depressive period in his life. It was not until May of 1983, right before he voluntarily entered DePaul’s after making an attempt on his life, that he realized something was wrong. As a result of taking the medication, respondent testified that he is physically and mentally healthy and in control of his condition and wishes to have the opportunity to practice law again.
The committee produced no countervailing evidence on the issue of mitigation.
We agree with the finding of the commissioner, concurred in by the committee, that respondent has been convicted of a serious crime which reflects adversely upon his moral fitness to practice law. Hence, disciplinary action is warranted. The most difficult consideration involving penalty is the weight to be given to respondent’s manic depressive illness during the period that the offense occurred and to his subsequent rehabilitation and continued state of recovery due to his maintenance on medication. While we realize the seriousness of the offense involved, we note that respondent’s culpability for commission of the alleged act was lessened by his impaired mental state. This consideration is particularly appropriate as a factor in mitigation of the discipline to be imposed.
After reviewing the evidence of mitigating circumstances as set forth above, we find that respondent should not be disbarred but rather suspended from the practice of law for an appropriate period of time. We note that respondent’s voluntary request for a suspension from practice was granted in January of 1985 and that suspension has been continuous since that time, almost four years. Considering respondent’s successful recovery to date, his immediate restitution, his cooperation in this proceeding, and his commendable record of employment under the supervision of our fellow judges, we conclude that the appropriate discipline is suspension for an additional year from the date of this decree; however, reinstatement will not be automatic. Respondent may apply for reinstatement after the lapse of the one-year period; and such application shall be granted by this court, after due proceedings, upon a clear showing by respondent that he is emotionally able to resume the practice of law. Absent reinstatement by this court, respondent’s suspension shall continue in effect.
DECREE
For the reasons assigned, it is ordered, adjudged and decreed that John M. Stand-ridge be suspended from the practice of law in Louisiana for a period of one year from the date of this decree; however, reinstatement will not be automatic. Respondent may apply for reinstatement after the lapse of the one-year period, and such application shall be granted by this court, after due proceedings, upon a clear showing by respondent that he is emotionally able to resume the practice of law. Absent reinstatement by this court, respondent’s suspension to practice law shall continue in effect. Respondent is to bear all costs of these proceedings.
LEMMON, J., concurs and assigns reasons.

. State v. Standridge, 505 So.2d 256 (La.App. 3d Cir.), writ denied, 508 So.2d 85 (La.1987).

. Respondent attempted to cash a check at First Homestead Federal Savings & Loan Association in New Orleans made payable to respondent and drawn on his law partner's trust account in the amount of 113,000. According to the findings of fact by the commissioner, respondent was placed in a diversionary program conditioned upon his seeking mental health treatment. On May 24, 1983, respondent voluntarily committed himself to DePaul Hospital for about one month. After his arrest for the theft charge in Lafayette, (Nov. 21, 1983), respondent surrendered to New Orleans authorities on January 24, 1984.

. Article 15, § 9(b), provides in pertinent part:
(b) When the Committee on Professional Responsibility has reason to believe that a member of this Association is incapacitated from continuing the practice of law by reason of mental infirmity or illness or because of addiction to drugs or intoxicants, the Committee shall petition the Supreme Court to determine whether such attorney is incapacitated. The Court may take, or through its Commissioner direct, such action as it deems necessary or proper to determine whether the attorney is so incapacitated, including examination of the attorney by such qualified medical experts as the Court shall designate. If, upon full consideration of all evidence so adduced, the Court concludes that the attorney is incapacitated from continuing to practice law, it shall enter an order suspending him on the ground of such disability until further order of the Court. Any pending disciplinary proceedings against the attorney may be held in suspense upon the issuance of such an order of suspension.
Respondent filed a petition with this court requesting an order suspending him from practice based upon his mental infirmity or illness. The petition also requested that any disciplinary proceeding against him be held in suspense upon issuance of the order by this court. The committee concurred in respondent’s petition and recommended that respondent be suspended.

. This action was taken under the provisions of Article 15, § 8(a), paras. (1) through (6) of the Articles of Incorporation of the Louisiana State Bar Association.

. The order of October 29, 1987 revoked the prior order of January 4, 1985, holding in suspense all disciplinary proceedings against respondent.

. Article 15, § 8(a), paras. (7)(a) through (d) of the Articles of Incorporation of the Louisiana State Bar Association provide:
(7) After the conviction has become final, that is, all appeals have been concluded or exhausted, the procedure shall be as follows:
(a) The Committee will file a petition in the Supreme Court seeking disbarment or any other remedy that the Committee deems appropriate, and the petition will be served upon the respondent in the same manner as in ordinary proceedings.
(b) When issue is joined by answer by the respondent, a Commissioner will be appointed by the Supreme Court to represent the Court in the same manner as in ordinary proceedings.
(c) At the hearing before the Commissioner, the certificate of the conviction of the respondent shall be conclusive evidence of his guilt of the crime for which he has been convicted.
(d) At the hearing based upon a respondent’s conviction of a crime, the sole issue to be determined shall be whether the crime warrants discipline, and if so, the extent thereof. At the hearing the respondent may offer evidence only of mitigating circumstances not inconsistent with the essential elements of the crime for which he was convicted as determined by the statute defining the crime.

. La. Const, art. 5, § 5(B) (1974).