STATE OF NEBRASKA EX REL. NEBRASKA STATE BAR
ASSOCIATION, RELATOR, V. THOMAS ALAN GLEASON,
RESPONDENT.
540 N.W.2d 359

Filed December 15, 1995.   No. S-94-845.

John W. Steele, Assistant Counsel for Discipline, for relator.

Joseph K. Meusey and Lawrence E. Welch, Jr., of Fraser, Stryker, Vaughn, Meusey, Olson, Boyer & Bloch, P.C., for respondent.

CAPORALE, LANPHIER, WRIGHT, and CONNOLLY, JJ., and RIST, D.J., and BOSLAUGH, J., Retired, and RONIN, D.J., Retired.

PER CURIAM.

On October 22, 1992, a complaint was filed against Thomas Alan Gleason with the Counsel for Discipline. Respondent Gleason testified that his client trust account was out of trust and that funds taken out of that account were used for his own purposes. The Nebraska State Bar Association's Committee on Inquiry of the Second Disciplinary District held a hearing on February 19, 1994. The committee, finding no public interest would be served in instituting formal charges, issued a private reprimand to respondent. The Counsel for Discipline appealed to the Disciplinary Review Board. The review board filed formal charges.

J. Thomas Rowen was appointed referee in December 1994. In the referee's finding of fact and recommendation, filed on April 4, 1995, the referee recommended that respondent receive a reprimand letter and 3 years' probation. The Counsel for Discipline on behalf of relator appealed to this court to review the referee's findings of fact and recommendations and to determine the appropriate discipline.

## BACKGROUND

On June 24, 1975, respondent was duly admitted to the practice of law in the State of Nebraska and, at all times relevant, was engaged in the private practice of law in Omaha, Nebraska. On October 22, 1992, the Counsel for Discipline received a complaint against respondent from Tom Miller, a client. On November 9, respondent issued a check representing the net proceeds due Miller from a workers' compensation case and sent a copy of it by facsimile to the Counsel for Discipline. Respondent's trust account did not contain funds on that date sufficient to cover the check. On November 17, after respondent transferred funds to the trust account, the check was actually delivered to Miller. Respondent's testimony, given before the Committee on Inquiry of the Second Disciplinary District in February 1992 and March 1993, revealed respondent's trust account was out of balance, i.e., the balance was insufficient for the payment of funds due clients.

The actions of respondent, as set forth above, constitute violation of his oath of office as an attorney licensed to practice

law in the State of Nebraska, as provided by Neb. Rev. Stat. § 7-104 (Reissue 1991), and are in violation of Canon 1, DR 1-102(A)(1) and (3) through (6), and Canon 9, DR 9-102(A)(1) and (2) and (B)(1), (3), and (4) of the Code of Professional Responsibility.

Respondent answered, admitting the factual allegation, but raising as defenses a psychological condition in mitigation and a procedural question of whether the Disciplinary Review Board has the power to file formal charges if the Committee on Inquiry has chosen not to.

Two physicians testified that the mental condition of respondent was a proximate cause or proximate contributing cause of the conduct of respondent which led to the charges. Dr. Hudson Hsieh testified that he treated respondent who developed panic attacks that were first diagnosed in December 1989. Dr. Hsieh also testified that respondent favorably responded to Prozac.

Dr. Bruce Gutnik reviewed the records of Dr. Hsieh and of Dr. Rodney Nichter, another psychiatrist who treated respondent, and the records of Priscilla Scott Thralls, a clinical social worker who counseled respondent. Dr. Gutnik concurred in Dr. Hsieh's diagnosis of chronic depression (dysthymia) and panic attack. Dr. Gutnik stated that the illnesses were a contributing proximate cause to respondent being out of trust. The evidence is undisputed that respondent first sought treatment in 1989, was without a bookkeeper for the first time in the fall of 1990, and later was out of trust.

Medical personnel concurred that respondent's depression and panic disorder were a proximate cause of respondent being out of trust and not correcting the problem. Dr. Gutnik explained panic disorder to the committee, analogizing an attack to the feeling that one has when diving into deep water and then realizing there is insufficient air in one's lungs, the feeling that one experiences while thrashing toward the surface; these feelings are the same type of feelings an individual experiences during a panic attack. Both physicians, as well as numerous attorneys and judges, testified through affidavits that in their opinion respondent was fit to practice law.

It is agreed that no other area of respondent's practice was affected.

## ASSIGNMENTS OF ERROR

The Counsel for Discipline asserts that the referee's findings of fact did not include facts which relate to respondent's failure to maintain proper trust account records. However, such facts are part of the record before us.

The Counsel for Discipline further asserts that the referee's recommendation that respondent be placed on probation for a period of 3 years is too lenient under the facts and circumstances as established by the record in this case.

## STANDARD OF REVIEW

The determination of what discipline is appropriate requires consideration of the nature of the offense, need for deterrence of future misconduct by others, maintenance of the reputation of the bar as a whole, protection of clients, the expression of condemnation by society on the moral grounds of the prohibited conduct, justice to the attorney, and the attorney's fitness to continue in the practice of law. *State ex rel. NSBA v. Douglas,* 227 Neb. 1, 416 N.W.2d 515 (1987), *cert. denied* 488 U.S. 802, 109 S. Ct. 31, 102 L. Ed. 2d 10 (1988).

To determine what sanction is appropriate, each case justifying discipline of an attorney must be evaluated individually in light of the particular facts and circumstances. *State ex rel. NSBA v. Veith,* 238 Neb. 239, 470 N.W.2d 549 (1991); *State ex rel. NSBA v. Miller,* 225 Neb. 261, 404 N.W.2d 40 (1987).

## ANALYSIS

After a careful review of the record, we accept the referee's finding of facts relevant to the formal charges, especially as the facts relate to respondent's failure to maintain proper trust account records.

We do not accept, however, the referee's recommendation that respondent be placed on probation for a period of 3 years. Relator is correct in asserting that that is too lenient a discipline under the facts and circumstances of this case. The appropriate discipline is discerned from a careful review of the totality of the circumstances and the weighing of several factors.

To determine whether and to what extent discipline should be imposed, it is necessary that the following factors be

considered: (1) the nature of the offense, (2) the need for deterring others, (3) the maintenance of the reputation of the bar as a whole, (4) the protection of the public, (5) the attitude of the offender generally, and (6) his or her present or future fitness to continue in the practice of law. *Veith, supra*; *State ex rel. NSBA v. Thor*, 237 Neb. 734, 467 N.W.2d 666 (1991); *State ex rel. NSBA v. Rhodes*, 234 Neb. 799, 453 N.W.2d 73 (1990), *cert denied* 498 U.S. 855, 111 S. Ct. 153, 112 L. Ed. 2d 119.

## Factors to Consider

First, there is no question that misappropriation of client funds, as one of the most serious violations of duty an attorney owes to clients, the public, and the courts, typically warrants disbarment. *Veith, supra*. Respondent testified that he failed to maintain the integrity of client funds.

Second, it is paramount that the court deter others from taking the same course as respondent. However, respondent is unique to this court in that he was undergoing treatment for his psychological problems before the Counsel for Discipline contacted him with the informal complaint. Respondent suffered from certain well-defined psychological problems, and those problems led to the complaint. There can be no implication that he sought treatment for his behavior in order to find some excuse to use in this proceeding.

Third, the maintenance of the reputation of the bar is important to the court. The question is how to maintain that reputation.

Fourth, this court's duty to protect the public would not be served by merely a 3-year probation. We have heretofore at least suspended an attorney for such a violation.

Fifth, several affidavits and the record of all the disciplinary proceedings show that respondent's attitude throughout this process has been open and highly cooperative. Respondent has shown both remorse and a resolve to deter any possible infractions in the future. At every stage of this disciplinary process, respondent was unanimously found to be deserving of leniency. The court does not abdicate its power to discipline attorneys, but will give weight to the findings and

recommendations of the referee. See *State ex rel. NSBA v. Gilroy*, 240 Neb. 578, 483 N.W.2d 135 (1992).

Sixth, as to respondent's fitness to practice law, no client ever suffered any monetary loss, and all clients were represented professionally and zealously. As to respondent's fitness to practice in the future, both physicians who testified stated that respondent was reacting favorably to treatment and that respondent was fit to practice law.

Finally, there are several major mitigating factors to be considered in this case: respondent's dual psychological illnesses and the fact that treatment of the conditions preceded the complaint.

Respondent's active involvement in the betterment of the legal profession, the affirmations of character on his behalf, the current medical treatment of respondent, and his resolve to continue such treatment should also be considered.

The unique nature of respondent's cooperation is another important mitigating factor. It is solely by virtue of respondent's testimony that we became aware of the information which led to the formal charge that respondent was out of trust. Had respondent not disclosed this information or been uncooperative, we do not know if the Counsel for Discipline would have had enough information to pursue formal out-of-trust disciplinary charges. We are dealing with an ethical system, the success of which depends largely upon voluntary compliance. We hesitate to set a precedent which would chill future respondents' cooperation.

Mitigating circumstances shown in the record are considered in determining the appropriate discipline imposed on an attorney for violating the Code of Professional Responsibility. *State ex rel. NSBA v. Veith*, 238 Neb. 239, 470 N.W.2d 549 (1991); *State ex rel. NSBA v. Miller*, 225 Neb. 261, 404 N.W.2d 40 (1987).

The nature of depression and the psychiatrist-assisted potential for cure are mitigating factors in Nebraska disciplinary proceedings. See *State ex rel. NSBA v. Barnett*, 243 Neb. 667, 501 N.W.2d 716 (1993).

Many cases describe the debilitating nature of depression and state that it and the psychiatrist-assisted potential for cure are

mitigating factors in disciplinary proceedings involving misappropriation of client funds. *Veith, supra* (citing *Louisiana State Bar Ass'n v. Larré*, 457 So. 2d 649 (La. 1984)). See, also, *In the Matter of Howle*, 294 S.C. 244, 363 S.E.2d 693 (1988); *Frazer v. State Bar of California*, 43 Cal. 3d 564, 737 P.2d 1338, 238 Cal. Rptr. 54 (1987); *The Florida Bar v. Condon*, 647 So. 2d 823 (Fla. 1994); *Matter of Hoover*, 161 Ariz. 529, 779 P.2d 1268 (1989); *Discipline of McLendon*, 120 Wash. 2d 761, 845 P.2d 1006 (1993); *Louisiana State Bar Ass'n v. Standridge*, 534 So. 2d 1256 (La. 1988).

### DISCIPLINE

We affirm that in virtually all future cases of misappropriation, disbarment will be the only appropriate discipline unless it appears that the misconduct resulted from nothing more than mere negligence. While avoiding a per se rule, we acknowledge our prior decisions and will regard a lesser sanction only when extraordinary mitigating factors are present. This court has found such factors in the past and may find other factors in the future. However, mitigating factors will only overcome the presumption of disbarment if they are extraordinary and, when aggravating circumstances are present, substantially outweigh those circumstances as well.

This court finds suspension to be the proper punishment in situations where the violation was grievous but the totality of the circumstances warranted leniency. See, *State ex rel. NSBA v. Gilroy*, 240 Neb. 578, 483 N.W.2d 135 (1992); *State ex rel. NSBA v. Thor*, 237 Neb. 734, 467 N.W.2d 666 (1991); *State ex rel. NSBA v. Neumeister*, 234 Neb. 47, 449 N.W.2d 17 (1989).

### CONCLUSION

When we balance the need to protect the public, the nature of respondent's offenses, the need for deterring others, and the reputation of the bar as a whole against respondent's interest in preserving his privilege to practice law and all mitigating circumstances, we must conclude that the only appropriate judgment is to suspend respondent from the practice of law effective immediately.

JUDGMENT OF SUSPENSION.

WHITE, C.J., and FAHRNBRUCH and GERRARD, JJ., not participating.